# EXHIBIT

# E



**SECRET** ███████

## DEPARTMENT OF THE TREASURY
### WASHINGTON, D.C. 20220

(U) Case ID FNK-7782

## (U) OFFICE OF FOREIGN ASSETS CONTROL

## (U) <u>EVIDENTIARY MEMORANDUM</u>

(U) MEMORANDUM FOR:   Andrea M. Gacki   *AMG 3·2·2018*
Acting Director
Office of Foreign Assets Control

(U) THROUGH:   Gregory T. Gatjanis   ████████
Associate Director
Office of Global Targeting   *3/1/18*

Todd Conklin   ██  ██   *3/1/18*
Deputy Associate Director
Office of Global Targeting

Mark Samara   *M.A.S. 3/1/2018*
Assistant Director
Global Crime and Narcotics Division

(U) FROM:   ████████████████
Sanctions Investigator   *3/1/2018*
Global Crime and Narcotics - Eastern Hemisphere

(U) SUBJECT:   Recommendation to deny the request for reconsideration and removal of AYMAN SAIED JOUMAA[1] from the list of Specially Designated Nationals and Blocked Persons

## (U) I. **INTRODUCTION**

(U) This memorandum recommends denying the request for reconsideration and removal of AYMAN SAIED JOUMAA (JOUMAA) from the list of Specially Designated Nationals and Blocked Persons (SDN List).

## (U) II. **BACKGROUND**

---

[1] (U) The name of the petitioner will appear in ALL CAPITAL letters.  Throughout this memorandum, an asterisk* following a name denotes an individual or entity whose property and interests in property is blocked.



1

**SECRET** ███████

~~SECRET~~ <span style="background:black">████████</span>

(U) On January 26, 2011, the Office of Foreign Assets Control (OFAC) designated JOUMAA as a Specially Designated Narcotics Trafficker (SDNT) pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act) [Exhibit 1, pp. 2-3] for playing a significant role in international narcotics trafficking. [Exhibit 2, p. 9]

(U) OFAC designated JOUMAA as a SDNT for coordinating the transportation, distribution, and sale of multi-ton shipments of cocaine from South America, and laundering the proceeds from the sale of cocaine in Europe and the Middle East. JOUMAA and his organization, operating in Lebanon, West Africa, Panama and Colombia, laundered proceeds from their illicit activities – as much as $200 million per month – through various channels, including bulk cash smuggling operations and Lebanese exchange houses.[2] [Exhibit 3, p. 1]

## (U) III. CHRONOLOGY OF EVENTS

(U) On June 17, 2011, a sealed complaint was filed in the U.S. District Court for the Eastern District of Virginia charging JOUMAA and another individual with conspiracy to distribute five kilograms or more of cocaine. [Exhibit 4] Supporting the complaint was an affidavit in support of an arrest warrant and criminal complaint, which was also sealed. [Exhibit 5]

(U) On November 23, 2011, a sealed indictment was filed charging JOUMAA and another individual with one count of conspiracy to distribute five or more kilograms of cocaine, knowing and intending that it would be unlawfully imported into the United States, and one count of conspiracy to commit money laundering. [Exhibit 6, pp. 3-6] On December 12, 2011, the matter was unsealed upon motion by the United States. [Exhibit 7, p. 2]

(U) In a letter dated May 18, 2016, JOUMAA requested administrative reconsideration of his designation and removal of his name from the SDN List. [Exhibit 8, p. 1] He further requested that OFAC provide him "specific inquiries and questions that address the factual basis underlying" his designation. [Exhibit 8, pp. 3-4] This request was also made via email with the correspondence attached. [Exhibit 9]

(U) In a separate letter dated May 18, 2016, JOUMAA requested that OFAC disclose any and all portions of the administrative record relied upon in the designation process, as well as any releasable exhibits attached to the administrative record. [Exhibit 10, p. 1]

(U) On May 18, 2016, OFAC acknowledged receipt of the correspondence from JOUMAA dated May 18, 2016, requesting both a copy of the administrative record and reconsideration of his designation as a SDNT. [Exhibit 11]

(U) On July 27, 2016, OFAC sent JOUMAA a letter seeking certain information in response to his reconsideration request. [Exhibit 12]

---

[2] (U) On January 26, 2011, OFAC also designated nine individuals and eight entities connected to JOUMAA's drug trafficking and money laundering organization pursuant to the Kingpin Act. [Exhibit 1, p. 2] The press release erroneously states that 19 entities were sanctioned. [Exhibit 3] Only eight entities were sanctioned on January 26, 2011 with JOUMAA. [Exhibit 1, p. 2]



SECRET ███████

(U) On October 25, 2016, JOUMAA submitted a partial response to OFAC's letter seeking information, as well as additional arguments pertaining to his request for reconsideration. [Exhibit 13]

(U) On November 14, 2016, JOUMAA submitted a second request for the administrative record related to his January 26, 2011 designation. [Exhibit 14, p. 1]

(U) On November 18, 2016, OFAC provided JOUMAA with a copy of the administrative record related to his January 26, 2011 designation, redacted to protect classified, law enforcement, and other privileged information. The administrative record included OFAC's evidentiary memorandum, certain exhibits, a non-privileged and unclassified summary of otherwise privileged information, OFAC's press release, and OFAC's press chart. [Exhibit 2][3]

(U) On April 24, 2017, JOUMAA submitted a supplement to his petition for reconsideration. [Exhibit 15]  The supplement included additional information and documents not provided in his response dated October 25, 2016. [Exhibit 15]

(U) On September 1, 2017, OFAC received correspondence from JOUMAA dated August 24, 2017. [Exhibit 19]  In this correspondence, which was also mailed to OFAC via FedEx tracking number 8106 5197 5724, JOUMAA provided a supplement to his petition for reconsideration, which included an analysis of OFAC's basis for the continuing designation of JOUMAA. [Exhibit 16, pp. 6-9]

(U) Also on September 1, 2017, OFAC received correspondence from JOUMAA dated August 29, 2017. [Exhibit 20]  In this correspondence, which was also mailed to OFAC via FedEx tracking number 8016 5197 5713, JOUMAA submitted a request to enter into a Terms of Removal Agreement with OFAC. [Exhibit 17]

(U) On September 5, 2017, OFAC acknowledged receipt of JOUMAA's correspondence dated August 24 and August 29, 2017. [Exhibit 18]

(U) On October 2, 2017, OFAC received correspondence from JOUMAA dated September 27, 2017. [Exhibit 21]  In this correspondence, which was also mailed to OFAC via FedEx tracking number 8106 5197 5584, JOUMAA requested an update as the status of his reconsideration petition. [Exhibit 23]

(U) On October 2, 2017, OFAC acknowledged receipt of his October 2, 2017 correspondence. [Exhibit 22]

(U) On October 2, 2017, OFAC denied JOUMAA's request to enter into a Terms of Removal Agreement, explaining that reconsideration of JOUMAA's designation was under review. [Exhibit 24]

---

[3] (U) Information redacted from the administrative record does not contain exculpatory information. In addition, information that is not relevant to JOUMAA was also redacted.

3

SECRET ███████

~~SECRET~~ ██████████

(U) On October 16, 2017, OFAC acknowledged receipt of JOUMAA's correspondence, dated September 27, 2017, requesting an update of the status of his reconsideration request. OFAC informed JOUMAA that his request was under consideration and that the process was lengthy to determine whether he continued to meet the criteria. JOUMAA was also informed that a careful review of the documents submitted was being performed. [Exhibit 25]  In addition to his responses to the questionnaire, JOUMAA had submitted more than 1,200 pages of materials to OFAC. [Exhibits 13 and 15]

(U) As of March 2018, JOUMAA has not faced the charges against him in the U.S. District Court for the Eastern District of Virginia, [Exhibit 5][4] nor has he notified OFAC of his intent or willingness to return to the United States to face those charges.

## (U) IV. ARGUMENTS

(U) A person may seek administrative reconsideration of his, her or its designation by submitting arguments or evidence that the person believes establishes that insufficient basis exists for the designation or the circumstances resulting in the designation no longer apply.  In addition, a person may propose remedial steps that would negate the basis for the designation.  [Exhibit 26, p. 31]  OFAC has carefully reviewed and considered JOUMAA's responses to the questionnaire provided by OFAC, as well as the additional documents, arguments, and evidence he provided. Based on the information available to OFAC, JOUMAA's arguments fail to demonstrate a basis for removal from the SDN List.

### (U) 1.   JOUMAA unpersuasively denies that he was involved in narcotics trafficking activities at any time.

(U) In JOUMAA's May 18, 2016 request for reconsideration, he stated that he "does not play a role in narcotics trafficking activities," "dispute[d] the factual basis underlying his continued designation," and "assert[ed] that an insufficient basis exists for the designation." [Exhibit 8, p. 1]

(U) Similarly, in JOUMAA's May 18, 2016 request for the administrative record, he stated that "he does not play a role in any activities related to or in support of international narcotics trafficking." [Exhibit 10, p. 1]

(U) In JOUMAA's October 25, 2016 response to OFAC's request for information, he stated that he "ha[d] not been involved in the cultivation, production, manufacture, distribution, selling, financing, or transport of narcotic drugs or any other controlled substances, nor ha[d] he ever attempted or conspired with others to do so."  JOUMAA also stated that he was "not aware of the laundering of drug proceeds or assets undertaken in his name."[5]  [Exhibit 13, p. 26]  Finally,

---

[4] (U) JOUMAA also acknowledges that the indictment remains "pending in the Eastern District of Virginia." [Exhibit 13, p. 27]
[5] (U) JOUMAA is inconsistent regarding his denials of narcotics trafficking and money laundering.  In his October 25, 2016 response to OFAC he categorically denies having ever been involved in drug trafficking, money laundering, or conspiring with others to do so. [Exhibit 13, pp. 26, 35]  However, he also seems to suggest at other points that he at one time did engage in narcotics trafficking or money laundering.  For example, in his May 18, 2016 request for the administrative record, JOUMAA states that access to the administrative record "is intended to

~~SECRET~~ ██████████

4

JOUMAA stated that his disclosure of information will serve as evidence that he "is not and has not engaged in activities related to narcotics trafficking, but has been an active business person involved in multiple lines of work," and that he "is not and has not been involved in activities related to narcotics trafficking or money laundering in support of narcotics trafficking." [Exhibit 13, p. 35]

(U) JOUMAA's claim that he was never involved in money laundering and drug trafficking is not credible. His designation was based upon reliable and corroborated information that he led a drug trafficking and money laundering organization moving hundreds of millions of dollars in narcotics proceeds from the United States to Lebanon. Known narcotics traffickers and money launderers worked with JOUMMA to coordinate drug money laundering in Florida. In addition, JOUMAA exported vehicles from the United States to West Africa to launder procceeds. [Exhibit 2, p. 2]

(U) Not only was JOUMAA designated for such illicit activities by OFAC, but he was also indicted by a federal grand jury for such activities in the U.S. District Court for the Eastern District of Virginia. The 2011 indictment charged JOUMAA with one count of conspiracy to distribute five or more kilograms of cocaine, knowing and intending that it would be unlawfully imported into the United States, and one count of conspiracy to commit money laundering. The indictment charges that JOUMAA and his co-conspirators "coordinated the shipment of at least tens of thousands of kilograms of cocaine from Colombia, through Central America and Mexico, to the United States, including 85,000 kilograms of cocaine shipped from Colombia for sale to Los Zetas[6] drug cartel" from approximately 2005 through 2007. [Exhibit 6, pp. 3-4] The indictment futher states that JOUMAA and his co-conspirators "laundered at least hundreds of millions of dollars in proceeds of illegal drug sales in the United States and elsewhere, including but not limited to an amount in excess of $250 million in drug related proceeds representing cocaine sales in the United States, Mexico, Central America, and Europe," which JOUMAA laundered from 1997 to approximately September 2010. [Exhibit 6, p. 4]

(U) Additionally, the indictment states JOUMAA and his co-conspirators "coordinated the shipment of multi-thousand kilogram quantities of cocaine from Colombia to Guatemala, Honduras, and Mexico for sale to Los Zetas drug cartel in Mexico," which was intended for final shipment to the United States. JOUMAA "would arrange for the laundering of drug-related proceeds from Mexico, Europe (predominantly Spain), and West Africa to Colombia." JOUMAA's co-conspirators would contact him in order "to arrange for the delivery of drug related proceeds to members" of JOUMAA's organization. JOUMAA and members of his organization "would then launder these proceeds and return them to the cocaine suppliers in Colombia." JOUMAA "would charge a fee between 8% and 14% for the laundering of these proceeds." These drug proceeds received by JOUMAA and his associates were "in the form of

---

assist [him] in remediating any behavior that might have served as the basis for his designation." [Exhibit 10, p. 2] In his letter dated August 24, 2017, he argues OFAC has not provided evidence that he is *currently* involved in drug trafficking or money laundering. [Exhibit 16, p. 2]. And in his October 25, 2016 response, JOUMAA argues that he "is not and has not been for some time involved in any transactions that could be deemed to fall under the Kingpin Act's definition of 'narcotics trafficking.'" [Exhibit 13, p. 37]

[6] (U) On April 15, 2009, the President identified Los Zetas* as a significant foreign narcotics trafficker pursuant to the Kingpin Act. [Exhibit 27] In addition, on August 11, 2011, OFAC designated Los Zetas* pursuant to Executive Order 13581 ("*Blocking Property of Transnational Criminal Organizations*"). [Exhibit 28, p. 2]

5

SECRET ████

United States currency and represented proceeds from the sale of cocaine in the United States." [Exhibit 6, p. 4]

(U) Furthermore, the indictment states that JOUMAA and his co-conspirators "would receive bulk deliveries of United States currency." "These deliveries of bulk cash, which represented proceeds of the sale of cocaine in the United States, were made in Mexico City, Mexico." "Once the drug proceeds were delivered to [JOUMAA] and his co-conspirators, the laundered proceeds would be paid out in Venezuela or Colombia to drug traffickers." JOUMAA would then launder these funds and make payment within five days from the date of delivery of the United States currency in Mexico. During the course of the conspiracy, JOUMAA "typically picked up between $2 and 4 million at a time in Mexico City." [Exhibit 6, pp. 4-5]

(U) Finally, the indictment further notes that JOUMAA and his co-conspirators would "pick up drug-related proceeds in Mexico, Europe, and West Africa." JOUMAA and his co-conspirators would "pick up United States currency in Mexico City, Mexico." JOUMAA would "launder these proceeds and repay them to drug traffickers in Colombia and Venezuela." The United States currency laundered by JOUMAA "represented the proceeds of the sale of cocaine shipped from Colombia to Guatemala, Honduras, and Mexico, for sale to the Los Zetas trafficking organization in Mexico. The ultimate destination of the cocaine shipped to Los Zetas drug cartel was the United States." [Exhibit 6 p. 5]

(U) Details regarding JOUMAA's drug trafficking and money laundering are also laid out in a June 17, 2011 affidavit in support of his arrest warrant and criminal complaint by a Special Agent, who at the time had approximately 15 years of experience with the Drug Enforcement Administration (DEA). The affidavit indicates that the DEA had been investigating JOUMAA since March 2010 and during the course of the investigation extensive interviews[7] were conducted and undercover operations were peformed. [Exhibit 5, pp. 1-3] For example, the affidavit states that in 2004 a confidential source (CS-1)[8] began working with JOUMAA and JOUMAA would arrange for the laundering of narcotics related proceeds from Mexico, Europe, and West Africa to Colombia. CS-1 would contact JOUMAA to "arrange for the delivery of drug related proceeds to members of JOUMAA's organization." According to the affidavit's recitation of information from CS-1, "JOUMAA and members of his organization would launder these proceeds and return them in Colombia." [Exhibit 5, p. 4]

(U) The affidavit further states, based on information provided by CS-1, that "JOUMAA would charge a fee of approximately 13% for the laundering of these proceeds," which were from the sale of cocaine in the U.S. and were in the form of U.S. currency. In addition, CS-1 would arrange for the delivery of the drug proceeds in bulk in U.S. currency to JOUMAA and members

---

[7] (U) DEA Special Agents write reports of investigation based on the Department of Justice's and DEA's promulgated policies for developing, using, and managing sources or informants (according to "*The Attorney General's Guidelines Regarding the Use of Confidential Informants*" and the "*DEA Agent's Manual*"), which specify practices for quality assurance in vetting and corroborating sources.

[8] (U) At the time the affidavit was executed, CS-1 had pled guilty to federal narcotics trafficking offenses and was awaiting sentencing. CS-1 had participated in a conspiracy to ship multi-thousand kilogram quantities of cocaine from Colombia, to Guatemala, Honduras, and Mexico for sale to Los Zetas*. The ultimate destination for this cocaine was the United States. CS-1 is cooperating with law enforcement with the anticipation of obtaining a reduction in his/her sentence. [Exhibit 5, pp. 3-4]

SECRET ████

FNK 7782 0006

SECRET ███████

of his organization. CS-1 advised that "JOUMAA typically picked up between 2 to 4 million dollars at a time" from CS-1 in Mexico City and that he laundered drug related proceeds for CS-1 until 2008. [Exhibit 5, pp. 4-5]

(U) According to another source, CS-2[9], who began working with JOUMAA in 2004, CS-2 would contact JOUMAA and "arrange for JOUMAA and members of his organization to pick up drug related proceeds in Mexico, Europe, and West Africa." CS-2 would coordinate with JOUMAA to "arrange the pick up of United States currency in Mexico City, Mexico." JOUMAA would then launder these proceeds and charge a 13 percent fee. The currency that JOUMAA laundered, according to CS-2, was from the proceeds of the sale of cocaine shipped from Colombia to Guatemala, Honduras, and Mexico for sale to Los Zetas*. CS-2 stated that the ultimate destination of the cocaine shipped to Los Zetas* was the United States. CS-2 continued to use the laundering services of JOUMAA until approximately 2008.[10] [Exhibit 5, pp. 5-6][11]

(U) 2.  **JOUMAA continues to be involved in money laundering activities, and his claims to the contrary are not credible.**

(U) In an April 24, 2017 letter to OFAC, JOUMAA stated that he "has not been involved with foreign currency exchange transactions since at least in or around 2011 when he was placed on OFAC's [SDN] list." [Exhibit 15, pp. 12-13]

(U) On August 24, 2017, JOUMAA stated that "OFAC lacks a factual and legal basis upon which to maintain [his] designation, as the allegations leveled at [him] are historical in nature and lack connection to [his] current activities." [Exhibit 16, p. 2]

(U) Based on the information available to OFAC, JOUMAA's claim that he is not currently involved in money laundering is not credible.

(C) ███████████████████████████████████

---

[9] (U) At the time the affidavit was executed, CS-2 was cooperating with law enforcement, including agents from U.S. Customs and Immigration Enforcement. CS-2 was a member of a drug trafficking and money laundering organization and worked extensively with CS-1. [Exhibit 5, p. 5]

[10] (U) Both CS-1 and CS-2 knew JOUMAA by his alias, Junior. [Exhibit 5 pp. 4-5] JOUMAA has confirmed that his alias is Junior. [Exhibit 13, p. 2]

[11] (U) JOUMAA's trafficking is also detailed in a 2017 Politico article. JOUMAA is described as a Medellin-based Lebanese businessman who led one of the biggest money laundering networks DEA had ever seen. The article goes on to describe JOUMAA's international money laundering scheme. As stated in the article, JOUMAA's network worked with Mexican drug trafficking organization, Los Zetas* "to move multi-ton loads of cocaine directly into the United States, and wash[ed] $200 million a month in criminal proceeds with the help of 300 or so used car dealerships. The network would funnel huge amounts of money to the dealerships to purchase used cars, which would then be shipped on to Benin, on Africa's west coast." [Exhibit 30, p. 17]

[12] (U//LES)  ████████████████████████

FNK 7782 0007

SECRET █████████

████████████████████████████████████
████████████████████████████████████
[Exhibit 29, p. 1]

(U//LES)████████████████████████████
████████████████████████████████████
[Exhibit 31, p. 3]

(U//LES)████████████████████████████
████████████[Exhibit 32, p. 1]████████
████████[Exhibit 32, p. 2]████████████
██████████████████████[Exhibit 32, pp. 1-2]
████████[Exhibit 32, pp. 4-5]██████████
██████████████[Exhibit 32, p. 5]

(S████████████████████████████████

[13] (U)████████████████████████████
████████████████████[Exhibit 35, pp. 1 & 4]
██████[Exhibit 36, pp. 1 & 4]██████████
[Exhibit 37, p. 1 & 3]
[14] (U//LES)████████████████████████
████████[Exhibit 31, p. 1]████████████
████████████[Exhibit 31 p. 2]██████████
██████████████[Exhibit 5,]████████████
██████████████████████████████████

[15] (U//LES)████████████████████████
Exhibit 5.
[16] (U)██████████████████████████████
████[Exhibit 38]██████████████████████
[17] (U//LES)/██████████████████████
████████████████████[Exhibit 39]████████
██████[Exhibit 40]

8

SECRET █████████

SECRET ██████████

██████████████████████████████████████████

[Exhibit 33, pp. 2-3]

[Exhibit 33, p. 3]

(U//LES) ████████████████████████████████████

████████████████████████████ [Exhibit 34, p. 2]

[Exhibit 34, p. 1]

(U//LES) ████████████████████████████████████

[Exhibit 41, pp. 2-3]

[Exhibit 41, p. 7]

[Exhibit 41, p. 2]

(U) 3. **JOUMAA's claims about his relationships, business or otherwise, with previously designated individuals are not credible.**

(U) a. **Pedro Claver Mejia Salazar\*, Victor Gabriel Mejia Alzate\*, and Juan Carlos Mejia Alzate\*[21]**

(U) In his October 25, 2016 letter to OFAC, JOUMAA stated that he has a "business relationship" with Pedro Claver Mejia Salazar\*, "knew him fairly well," and that he was a "dealer in commercial goods" who provided JOUMAA with "lots of credit in his own business." Although JOUMAA stated that Pedro Claver Mejia Salazar\* was "the first person to begin selling [JOUMAA] U.S. dollars," JOUMAA did not admit that he engaged in any illicit activities such as money laundering with or on behalf of Pedro Claver Mejia Salazar\*. [Exhibit 13, p. 8]

(U) In his April 24, 2017 letter to OFAC, JOUMAA stated that he has known Victor Gabriel\* and Juan Carlos Mejia Alzate\* since childhood "but has never been involved in a business relationship" with them. JOUMAA did not admit that he engaged in any illicit activities such as money laundering with or on behalf of Victor Gabriel\* or Juan Carlos Mejia Alzate\*. [Exhibit 15, p. 3]

---

[18] (U//LES) ████████████████████████████████

[19] (U//LES) ████████████████████████ Exhibit 31, p. 3]

[20] (U//LES) ████████████████████████████████
[Exhibit 41, p. 2]
[21] (U) On July 1, 2014, OFAC designated Pedro Claver Mejia Salazar\*, Victor Gabriel Mejia Alzate\*, and Juan Carlos Mejia Alzate\* pursuant to the Kingpin Act. [Exhibit 45, pp. 2-3]

9

SECRET ██████████

SECRET ████████

(U) Based on the information available to OFAC, JOUMAA's denials are not credible.

(U) Victor Gabriel* and Juan Carlos Mejia Alzate* are the sons of Pedro Mejia Salazar*. Pedro Mejia Salazar* primarily laundered narcotics proceeds on behalf of La Oficina de Envigado*.[22] Pedro Mejia Salazar* relied upon a network of trusted family members to carry out his money laundering transactions, including his sons Victor Gabriel* and Juan Carlos Mejia Alzate*. He also worked with JOUMAA as part of his global drug money laundering operations. [Exhibit 42]

(U) Given that Pedro Mejia Salazar* worked with JOUMAA as part of his global drug money laundering operations and relied upon a network of family members to carry out his money laundering transactions, including his sons Victor Gabriel* and Juan Carlos Mejia Alzate*, JOUMAA's statements are not credible.

(U) On May 4, 2017, Pedro Mejia Salazar* pleaded guilty in U.S. District Court for the District of Massachusetts for his role in a conspiracy to launder drug proceeds for and on behalf of La Oficina de Envigado* using his family business. [Exhibit 43, p. 1] The investigation surrounding Pedro Mejia Salazar* targeted money launderers who use the international financial system and the black market peso exchange to return drug proceeds collected in the U.S. and other countries. [Exhibit 43, p. 2] On September 6, 2017, Pedro Mejia Salazar* was sentenced to a 50-month prison term. [Exhibit 44, p. 1]

(U//LES) ████████████████████████████████████████

████████████████████████████████████████

[Exhibit 46, p. 2]

(U//LES) ████████████████████████████████████████

████████████████████████████████████████

[Exhibit 47, p. 1]

(U//LES) ████████████████████████████████████████

████████████████████████████████████████

---

[22] (U) On June 26, 2014, OFAC designated La Oficina de Envigado* pursuant to the Kingpin Act. [Exhibit 42]

[23] (U//LES) ████████████████████████████████████████ Exhibits 46, 47, 48, and 49] [Exhibit 49, p. 2] █████ [Exhibit 48, p. 2] ████ [Exhibit 49 p. 3]

SECRET ████████

FNK 7782 0010

SECRET ████

████████████

[Exhibit 48, p. 2]

(U//LES) ████████████

[Exhibit 49, p. 3]

(U//LES) ████████████

[Exhibit 50, pp. 3-4]

[Exhibit 50, p. 4]

(U//LES) ████████████

[Exhibit 50, p. 4]

### (U) b. Merhi Ali Abou Merhi, Atef Merhi Abou Merhi, and Hana Merhi Abou Merhi

(U) In his October 25, 2016 response to OFAC's request for information, JOUMAA denied having a relationship, business or otherwise, with Merhi Ali Abou Merhi, Atef Merhi Abou Merhi, and Hana Merhi Abou Merhi.[28]  [Exhibit 13, pp. 10-11]

---

[24] (U//LES) ████████████

[Exhibit 41, p. 7]

[25] (U) ████████████

[26] (U//LES) ████████████

[Exhibit 50, p. 1]

[27] (U) ████████████ [Exhibit 42]

[Exhibit 53, pp. 2-3]

[28] (U) On October 1, 2015, OFAC designated Merhi Ali Abou Merhi, Atef Merhi Abou Merhi (Atef Abou Merhi), and Hana Merhi Abou Merhi (Hana Abou Merhi) pursuant to the Kingpin Act.  [Exhibit 54, pp. 2-3]  On May 9,

11

SECRET ████

FNK 7782 0011

SECRET ██████████

(U) Based on the information available to OFAC, JOUMAA's denial is not credible.

(U//FES) ████████████████████████████████████████████

[Exhibit 51, p. 3]

(U//FES) ████████████████████████████████████████████

[Exhibit 52, p. 2]

[Exhibit 52, p. 3]

(U) 4. **The Information Relied upon by OFAC Is Reliable.**

(U) In his October 25, 2016 correspondence, JOUMAA states that "the publicly-available evidence appears to be primarily reliant on three confidential sources, at least two of whom were either pending trial or sentencing before a U.S. federal court." According to JOUMAA, due to the fact that their cooperation with U.S. government authorities led to reductions in their sentences, these sources were likely motivated to provide information, whether true or not. JOUMAA believes that "the fact that the cooperation of these sources was motivated by expected reductions in sentencing should render suspect the information provided." While initially questioning the credibility of the information used to designate him, JOUMAA then proceeds to argue that unless OFAC has contemporaneous evidence tying him to narcotics trafficking and money laundering activities, the Kingpin Act does not support maintaining him on the SDN List. [Exhibit 13, p. 34]

(U) The DEA is charged with conducting drug trafficking investigations. During the course of an investigation, the DEA relies upon seized documents, confidential sources or informants, undercover operations, intercepted telephone calls, and other methods to research and document the operations of a drug trafficking organization.

---

2017, OFAC removed Merhi Ali Abou Merhi, Atef Abou Merhi, and Hana Abou Merhi from the SDN List. [Exhibit 55, pp. 2-3]

SECRET ██████████

SECRET███████

(U) OFAC considers the information and sources in the DEA reports of investigation as reliable based on DOJ's and DEA's promulgated policies for developing, using, and managing sources or informants (the *Attorney General's Guidelines Regarding Use of Confidential Informants* and the *DEA Agent's Manual*). Pursuant to these policies, OFAC considers the DOJ's and DEA's practices for quality assurance in vetting and corroborating their sources to be reliable. Accordingly, when a source's information is documented in a DEA report of investigation, the source's reliability has already been taken into consideration and the source has been deemed reliable.

(U) Here, the nature of the information from a variety of sources establishes that the information is reliable. Further, JOUMAA has not provided any evidence to substantiate his claim that the DEA erroneously characterized its sources as reliable or misstated the information provided by these sources. By contrast, JOUMAA has provided demonstrably false and misleading information to OFAC in the course of requesting his removal from the SDN List.

(U) 5. **The Lebanese legal proceedings are not relevant since the court did not possess information available to the United States.**

(U) JOUMAA provided OFAC with information regarding a 2016 Lebanese court proceeding that was affirmed by a panel of judges in February 2017, which purportedly found there was "a lack of evidence to support the indictment and prosecution" of JOUMAA for the crime of money laundering. [Exhibit 15, pp. 10-11] JOUMAA claims that the court considered evidence presented in the case and the findings of an investigative commission, including deposits made and withdrawals from accounts held by JOUMAA and his brother since 1998. [Exhibit 15, p. 10] According to JOUMAA, the court did not find evidence indicating "anything unlawful or otherwise untoward about these check deposits" and they were "ordinary for the type of bank accounts." In addition, the court purportedly reviewed transactions involving New Line Exchange Trust Co. According to JOUMAA, "the court could find no evidence supporting OFAC's allegations and lamented the failure of the U.S. government to turn over evidence to Lebanese authorities." [Exhibit 15, p. 11]

(U) While OFAC does not dispute the summary of the proceedings as provided by JOUMAA, they are not probative for purposes of assessing JOUMAA's request for reconsideration. As stated by JOUMAA, the Lebanese court was not in possession of the body of evidence available to the United States. Such information, from a variety of sources, is detailed above and clearly indicates that JOUMAA laundered funds as part of a narcotics trafficking scheme and continues to do so. The Lebanese proceedings are not dispositive and have no relevance upon the instant determination.

(U) 6. **JOUMAA's remaining arguments are without merit.**

(U) JOUMAA makes several other arguments that are without merit. In his October 25, 2016 letter to OFAC, he argues that the evidence that has been made publicly available is conclusory in nature and the underlying evidence supporting the allegations has not been provided. [Exhibit 13, p. 34]

SECRET███████

SECRET ████████

(U) Evidence was withheld from JOUMAA to the extent that it was classified, law enforcement sensitive or otherwise privileged information, or irrelevant or non-responsive. Nevertheless, the press release and press chart issued on the date of JOUMAA's designation provided detailed information regarding the basis of his designation, describing JOUMAA's illicit activities, the methods he and his organization used, the amount of money laundered, and the identities of his criminal associates and front companies. [Exhibit 3]  In addition, on November 18, 2016, JOUMAA received a redacted copy of the administrative record of his designation. [Exhibit 2] Included with the administrative record was a non-privileged and unclassified summary of otherwise privileged information. [Exhibit 2, p. 2]  Thus, notwithstanding that JOUMAA has not been afforded the opportunity to review classified or privileged information in the administrative record, the information disclosed to JOUMAA is certainly not conclusive and provides ample basis to understand the facts underlying his designation.

(S ████████████████████████████████

[Exhibits 31, 32, 34, 41, 46-52]

[Exhibits 29 and 33].

(U) Likewise, JOUMAA argues that "[m]istaken designations are a threat to the confidence with which the public and private sector place in the integrity of OFAC's administration of U.S. sanctions programs" and that "it is essential that all parties have confidence in the accuracy and integrity of OFAC's fact-finding process." [Exhibit 13, p. 35]  JOUMAA has provided no evidence to indicate that his designation was due to mistaken identity. Nor has he provided any information to impugn the accuracy and integrity of OFAC's fact finding process. OFAC has relied upon a variety of sources to establish that JOUMAA continues to engage in money laundering and narcotics trafficking.

(U) JOUMAA argues that "OFAC should work in good-faith with [him] to pinpoint the conduct at issue and to detail how [he] can take action to instill confidence in OFAC that [he] is not engaged in activities related to narcotics trafficking." [Exhibit 13, p. 36]  In order to be removed from the SDN List, it would need to be established that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply. [Exhibit 26] OFAC has sufficiently described the illicit activity engaged in by JOUMAA, and JOUMAA has not demonstrated, nor does the available evidence establish, that he has ceased activities related to narcotics trafficking, including money laundering.

(U) Finally, JOUMAA suggests that OFAC does not have "full faith and confidence in the evidence underlying its decision to designate and maintain [his] designation." [Exhibit 13, p. 36] For the reasons stated above, OFAC has full confidence in the reliability of the evidence relied upon in designating JOUMAA, and its review of the information currently available—including classified and law enforcement sensitive information, which JOUMAA has not reviewed—confirms that his continued designation is warranted.

(U) 7. **Submission of documents by JOUMAA to OFAC**

SECRET ████████ 

FNK 7782 0014

SECRET██████

(U) As part of his correspondence with OFAC, JOUMAA submitted numerous exhibits as attachments to his October 25, 2016 and April 24, 2017 responses.

(U) On October 25, 2016, JOUMAA responded to questions from OFAC regarding relationships he had to certain individuals and companies. As part of his responses, JOUMAA attached two exhibits totaling approximately 250 pages. One exhibit consisted of copies of his passports (Colombia, Lebanon, and Venezuela). The second exhibit consisted of corporate formation documents of Goldi Electronics S.A.*,[29] bank statements for the accounts of Goldi Electronics S.A.*, invoices and shipping documents, and certain Society for Worldwide Interbank Financial Telecommunications (SWIFT) messages. [Exhibit 13] JOUMAA noted in his October 25, 2016 response to OFAC that he started Goldi Electronics S.A.* in 2008 and operated the company until his designation in 2011. [Exhibit 13, p. 13]

(U) In addition, on April 24, 2017, JOUMAA attached twenty-six exhibits, totaling approximately 1,000 pages, as part of his follow-up response to the questionnaire. The exhibits consisted of corporate documents and invoices related to the Hassan Ayash Exchange Company* and the New Line Exchange Trust Co.*,[30] as well as additional corporate documents related to Goldi Electronics S.A.* [Exhibit 15]

(U) JOUMAA noted in this April 24, 2017 response to OFAC that his relationship with the Hassan Ayash Exchange Company* began around 2005 and continued until his designation. [Exhibit 15, p. 5] JOUMAA also described his business relationship with the New Line Exchange Trust Co.* which was established on January 16, 2008 at his "behest" and has not engaged in any operations since August 2011. [Exhibit 15, pp. 5-9]

(U) Based on the information currently available to OFAC, including the documents provided by JOUMAA, OFAC accepts, for purposes of deciding JOUMAA's request for reconsideration, his claims that the New Line Exchange Trust Co.* has not engaged in any operations since August of 2011, that his relationship with the Hassan Ayash Exchange Company* ceased after his designation, and that he ceased operating Goldi Electronics S.A.* after his designation. Nevertheless, the documents JOUMAA submitted do not establish that an insufficient basis exists for the 2011 designation. As noted in the press release, JOUMAA used the Hassan Ayash Exchange Company*, the Ellissa Exchange Company*,[31] and the New Line Exchange Trust Co.* in connection with his money laundering activities. [Exhibit 3, p. 40]

(U) First, the documents submitted by JOUMAA do not rebut OFAC's evidence that he used the Hassan Ayash Exchange Company* and the New Line Exchange Trust Co.* in connection with his money laundering activities. Second, the documents do not address the other aspects of JOUMAA's drug trafficking and money laundering network that served as the basis for his designation, such as the Ellissa Exchange Company*. In addition, JOUMAA used channels outside of Lebanon, including by means that did not involve business entities, to launder funds.

---

[29] (U) Goldi Electronics S.A.* was designated on January 26, 2011 pursuant to the Kingpin Act. [Exhibit 3]
[30] (U) New Line Exchange Trust Co.* and the Hassan Ayash Exchange Company were designated on January 26, 2011 pursuant to the Kingpin Act. [Exhibit 3]
[31] (U) Ellissa Exchange Company* was designated on January 26, 2011 pursuant to the Kingpin Act. [Exhibit 3]

15

SECRET██████

SECRET ████████

[Exhibit 3; Exhibit 6, pp. 3-5][32]  Third, while the invoices show examples of specific apparent transactions,[33] JOUMAA did not submit an independent audit[34] of the Hassan Ayash Exchange Company* or the Ellissa Exchange Company*.

(U) Finally, the evidence available to OFAC, as discussed above, establishes that JOUMAA continues to be involved in money laundering activities, and his claims to the contrary are not credible.  Accordingly, while JOUMAA may have either ceased his relationship with the New Line Exchange Trust Co.*, Hassan Ayash Exchange Company* or Goldi Electronics S.A.*, or these entities may no longer be operational, this does not establish that JOUMAA has ceased laundering money or that he no longer engages in narcotics trafficking.  Thus, the circumstances resulting in the designation still apply, and the documents do not demonstrate that removal from the SDN List is warranted.

(U) 8. **Other Information Relevant to Credibility**



[Exhibit 56, pp. 1-2]

[Exhibit 56, p. 2]

(U) V. **CONCLUSION**

---

[32] (U//LES) ████████ [Exhibit 40, p. 60] ████████ [Exhibit 57, p. 5; see also Exhibit 48, p. 2; Exhibit 50, p. 4]
[33] (U) For example, two invoices show the exchange of 1.25 million euros to approximately $2 million U.S. dollars. However, there is no information regarding the source of the customer's euros or the purpose of the transfer to dollars. [Exhibit 15, Exhibits A, p. 16 and H, p. 67]  Another invoice shows the sale of appliances, such as washing machines and air conditioners. [Exhibit 15, Exhibit G, p. 51]  A third invoice shows a credit to M/S. Global Energy Food Industries in the amount of $60,000 for the product "biscuit", by order of Ramani Distribution Co. [Exhibit 15, Exhibit N, p. 109]  Lastly, a transfer of funds by the New Line Exchange Trust Co.* is reflected in an "Order Transfer" in the amount of $7,300 for "thread as raw material." [Exhibit 15, Exhibit N, p. 144]
[34] (U) One document is a Banking Control Commission report regarding the New Line Exchange Trust Co.*, dated March 20, 2015, which does note that the company appeared to comply with certain provisions to fight money laundering, which require the maintenance of documents related to clients who conduct operations exceeding $10,000. [Exhibit 15, Exhibit S, p. 901]  However, given the various methods and entities used by JOUMAA and his organization to engage in money laundering, as well as the evidence that JOUMAA continues to be involved in money laundering activities, OFAC does not consider this report sufficient to warrant JOUMAA's removal from the SDN List.

16

SECRET ████████

SECRET ████████

(U) According to information available to OFAC, JOUMAA continues to meet the criteria for designation as an SDNT pursuant to the Kingpin Act. Information available to OFAC indicates that JOUMAA continues to play a significant role in international narcotics trafficking. Therefore, JOUMAA's reconsideration request and removal from the SDN List should be denied.

(U) <u>Recommendation</u>: That you sign the attached letter informing AYMAN SAEID JOUMAA of OFAC's decision to deny his request for reconsideration and removal from the SDN List.

(U) Agree: _____✓ AMG 3.__.2018_____     Disagree: _____     Discuss: _____

SECRET ████████

17

~~SECRET~~ ███████

Exhibit List[35]

| | | |
|---|---|---|
| (U) | Exhibit 1 | Sanctions Actions Pursuant to the Foreign Narcotics Kingpin Designation Act, 76 Fed. Reg. 5858 (January 26, 2011). |
| (U) | Exhibit 2 | Letter, OFAC to Erich C. Ferarri, [FNK-7782], November 18, 2016. |
| (U) | Exhibit 3 | U.S. Department of the Treasury website, Press Release, "Treasury Targets Major Lebanese-Based Drug Trafficking and Money Laundering Network," January 26, 2011, available at www.treasury.gov/press-center/press-releases/Pages/tg1035.aspx. |
| (U) | Exhibit 4 | Criminal Complaint, *U.S.A. v. Ayman Joumaa, et. al.*, Case No. 11-mj-467 (EDVA, June 17, 2011). |
| (U) | Exhibit 5 | Affidavit in Support of Arrest Warrant & Criminal Complaint, *U.S.A. v. Ayman Joumaa*, 11-mj-467, (EDVA, June 17, 2011). |
| (U) | Exhibit 6 | Indictment, *U.S.A. v. Ayman Joumaa*, Case No. 11-CR-560, (EDVA, November 3, 2011). |
| (U) | Exhibit 7 | Criminal Docket, *U.S.A. v. Ayman Joumaa*, 11-CR-560, (EDVA, November 23, 2011). |
| (U) | Exhibit 8 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, May 18, 2016. |
| (U) | Exhibit 9 | Email, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, May 18, 2016. |
| (U) | Exhibit 10 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, May 18, 2016. |
| (U) | Exhibit 11 | Email, OFAC to Ferrari & Associates, P.C., May 18, 2016. |
| (U) | Exhibit 12 | Letter, OFAC to Ferrari & Associates, P.C., June 27, 2016. |
| (U) | Exhibit 13 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, October 25, 2016. |
| (U) | Exhibit 14 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, November 14, 2016. |
| (U) | Exhibit 15 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, April 24, 2017. |
| (U) | Exhibit 16 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, August 24, 2017. |

---

[35] (U) Information redacted from exhibits is not exculpatory and is not relevant.

18

~~SECRET~~ ███████

SECRET█████

| (U) | Exhibit 17 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, August 29, 2017. |
| (U) | Exhibit 18 | Email, OFAC to Ferrari & Associates, P.C., September 5, 2017. |
| (U) | Exhibit 19 | Email, Ferrari & Associates, P.C. to OFAC, September 1, 2017. |
| (U) | Exhibit 20 | Email, Ferrari & Associates, P.C. to OFAC, September 1, 2017. |
| (U) | Exhibit 21 | Email, Ferrari & Associates, P.C. to OFAC, October 2, 2017. |
| (U) | Exhibit 22 | Email, OFAC to Ferrari & Associates, P.C., October 2, 2017. |
| (U) | Exhibit 23 | Letter, Ferrari & Associates, P.C. on behalf of Ayman Joumaa to OFAC, September 27, 2017. |
| (U) | Exhibit 24 | Letter, OFAC to Ferrari & Associates, P.C., October 2, 2017. |
| (U) | Exhibit 25 | Letter, OFAC to Ferrari & Associates, P.C., October 16, 2017. |
| (U) | Exhibit 26 | 31 C.F.R. Section 501.807 (1999). |
| (U) | Exhibit 27 | White House website, Office of the Press Secretary, "Overview of Foreign Narcotics Kingpin Designation Act," April 15, 2009. |
| (U) | Exhibit 28 | Sanctions Actions Pursuant to Executive Order 13581, 76 Fed. Reg. 51125 (August 11, 2011). |
| (S█████ | Exhibit 29 | ███████████████████████████ |
| (U) | Exhibit 30 | Politico, "The Secret Backstory of How Obama Let Hezbollah off the Hook," Josh Meyer, December 22, 2017, available at http://www.politico.com/interactives/2017/obama-hezbollah-drug-trafficking-investigation/. |
| (U//LES) | Exhibit 31 | ███████████████████████████ |
| (U//LES) | Exhibit 32 | |
| (S█████ | Exhibit 33 | |
| (U//LES) | Exhibit 34 | |

19

SECRET█████

SECRET ████

| (U) | Exhibit 35 | ████████████████ |
| (U) | Exhibit 36 | |
| (U) | Exhibit 37 | |
| (U) | Exhibit 38 | |
| (U) | Exhibit 39 | Department of Justice, "Organized Crime Drug Enforcement Task Forces," June 9, 2015. |
| (U//LES) | Exhibit 40 | ████████████████ |
| (U//LES) | Exhibit 41 | |
| (U) | Exhibit 42 | U.S. Department of the Treasury website, Press Release, "Treasury Designates a Medellin, Colombia-based Drug Money Laundering Network with Ties to La Oficina de Envigado and Ayman Saied Joumaa, "July 1, 2014, available at www.treasury.gov/press-center/press-releases/pages/jl250.aspx. |
| (U) | Exhibit 43 | U.S. Department of Justice, "Colombian National Pleads Guilty to International Money Laundering," May 5, 2017, available at www.justice.gov/usao-ma/pr/colombian-national-pleads-guilty-international-money-laundering. |
| (U) | Exhibit 44 | Boston Globe, "Man who laundered cash for crime ring linked to Pablo Escobar sentenced in Boston," September 7, 2017, available at www.bostonglobe.com/metro/2017/09/07/Colombian-man-who-laundered-cash-for-crime-ring-linked-to-pablo-escobar-sentenced-boston/oPxFxa7InmPTJtbFYK4RtI/story.html. |
| (U) | Exhibit 45 | Sanctions Actions Pursuant to the Foreign Narcotics Kingpin Designation Act, 79 Fed. Reg. 40839, July 1, 2014. |
| (U//LES) | Exhibit 46 | ████████████████ |
| (U//LES) | Exhibit 47 | |
| (U//LES) | Exhibit 48 | |
| (U//LES) | Exhibit 49 | |
| (U//LES) | Exhibit 50 | |
| (U//LES) | Exhibit 51 | |
| (U//LES) | Exhibit 52 | |

20

SECRET ████

SECRET █████

| (U) | Exhibit 53 | Sanctions Actions Pursuant to Foreign Narcotics Kingpin Designation Act, 82 Fed. Reg. 41091, August 22, 2017. |
| (U) | Exhibit 54 | Sanctions Actions Pursuant to Foreign Narcotics Kingpin Designation Act, 80 Fed. Reg. 60436, October 1, 2015. |
| (U) | Exhibit 55 | Sanctions Actions Pursuant to Foreign Narcotics Kingpin Designation Act, 82 Fed. Reg. 22721, May 9, 2017. |
| (█) | Exhibit 56 | ████████████████████████ |
| (U//LES) | Exhibit 57 | ████████████████████████ |

FNK 7782 0021