**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| AYMAN SAIED JOUMAA | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| STEVEN MNUCHIN, *et al.* | ) |
| Defendants. | ) |

Civil Action No. 17-2780 (TJK)

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    I.       Statutory and Regulatory Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

          A.     Plaintiff's Initial Designation By OFAC . . . . . . . . . . . . . . . . . . . . . . . . .6

          B.     Plaintiff's Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

          C.     Plaintiff's Reconsideration Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

          D.     OFAC's Denial of Plaintiff's Reconsideration Petition . . . . . . . . . . . . . 10

          E.     Plaintiff's Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LEGAL STANDARDS

    I.       Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.     Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

DISCUSSION

    I.       Plaintiff is Entitled to Summary Judgment on Counts I and II Because Defendants' Denial of Plaintiff's Reconsideration Request and Their Finding that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act Constitutes Arbitrary and Capricious Agency Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    II.     Plaintiff is Entitled to Summary Judgment on Count III Because Defendants Acted in Excess of Their Statutory Authority When They Made a Finding That Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act . . . . . . . 24

    III.    Plaintiff is Entitled to Summary Judgment on Count IV Because Defendants Failed to Provide Adequate Notice of the Factual Basis for Denying His Reconsideration Request and Determining He Continues to Meet the Criteria for Designation Under the Kingpin Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

          A.     Defendants Violated Plaintiff's Due Process Rights by Failing to Provide Adequate Notice as to Their Denial of Plaintiff's Reconsideration Request

and Their Determination that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B.   Defendants Violated the APA By Failing to Adequately Set Forth The Reasons for Their Denial of Plaintiff's Reconsideration Request and Their Determination that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Aktieselskabet v. Fame Jeans*, 525 F.3d 8 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Al Haramain Islamic Found., Inc v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) . . . . 31

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Canning v. U.S. Dep't of Justice*, 567 F.Supp.2d 85 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . 33

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 25

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Empresa Cubana Exportadora v. U.S. Dep't of Treasury*, 516 F.Supp.2d 43 (D.D.C. 2007) .15, 21

*Fares v. Smith*, 249 F.Supp.3d 115 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Herron v. Fannie Mae*, 861 F.3d 160, (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) . . . . . . .13, 15, 30

*Ingalls Shipbuilding v. Director, OWCP*, 519 U.S. 248 (1997) . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Kindhearts for Charitable Humanitarian Dev. v. Geithner*,
    647 F.Supp.2d 857 (N.D. Ohio 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lind v. McHugh*, Civil Action No. 10-22107 (RBW) (D.D.C. Aug. 7, 2014) . . . . . . . . . . . . . . 37

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    826 F.3d 492 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lyng v. Payne*, 476 U.S. 926 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mathews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .  14

*Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) . . . . . . . . 30

*Securities Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Tourus Records v. DEA*, 259 F.3d 731 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . 24

*Williams-Jones v. LaHood*, 656 F.Supp. 2d 63 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Zevallos v. Obama*,

    10 F.Supp.3d 111 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) . . . . . . . . 13, 28, 31

## STATUTES

1 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. § 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 1901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

21 U.S.C. § 1902 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 1904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. § 1905 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 1907 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## REGULATIONS

31 C.F.R. § 501.807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 8

31 C.F.R. § 598.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.309 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 598.803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**RULES**

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION

By relying on factors that Congress did not intend for it to consider and failing to establish a rational connection between its conclusions and the evidence provided, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") seeks to radically expand the statutory authority that Congress provided to the executive.   OFAC now seeks the Court's imprimatur for these extra-legal actions.   Plaintiff Ayman Saied Joumaa respectfully requests that the Court instead preserve statutory boundaries and uphold the intent and the policy of the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et seq*.

Defendants have cast Plaintiff as one of the world's most shadowy and significant narcotics traffickers and money launderers.   This, however, is belied by the events that have brought these parties before this Court.   Plaintiff, who lives openly in Lebanon, has disclosed his personal information to OFAC; has voluntarily availed himself of OFAC's reconsideration process; has provided substantial documentation to OFAC regarding his former business activities; has provided fulsome responses to OFAC's inquiries regarding his past relationships with 150 individuals or entities; has traveled to Panama to meet with agents of the U.S. Drug Enforcement Administration ("DEA") to answer their questions regarding his activities;[1] has been exonerated of money laundering charges in his home country of Lebanon; has requested that OFAC enter into a Terms of Removal Agreement under which the rescission of his designation would be based on conditions of OFAC's choosing; and has filed this lawsuit, putting on public display the U.S. Government's allegations about him and his activities.   In short, Plaintiff is not hiding from OFAC's accusations, and has gone to great lengths over the course of several years to proactively

---

[1] A Lebanese court noted that during this meeting DEA agents primarily asked Plaintiff about his background and informed him that they knew he was not involved in narcotics trafficking nor financing Hezbollah. Administrative Record ("A.R.") 1367-1368.

1

resolve the U.S. Government's concerns regarding his activities.  These efforts include terminating the operation of his businesses and divesting from entities alleged to be involved in money laundering, and by urging OFAC to provide him direction as to any additional concerns that should be remediated.

OFAC, on the other hand, has consistently responded to Plaintiff in a perfunctory manner, has rebuffed Plaintiff's attempts to resolve the agency's concerns, and has refused to provide Plaintiff with actual notice as to the evidentiary basis of its designation action.  Despite Plaintiff's provision of substantive documentation and willingness to provide any additional information that the agency might request, OFAC has chosen not to ask for or accept such information and seeks instead to rely on nearly decade-old fact-findings by the DEA to support its determination.

It is thus no surprise that OFAC now presents evidence for its denial of Plaintiff's reconsideration request that has no bearing on the statutory criteria for designation under the Kingpin Act.  Indeed, OFAC makes no concerted effort to fairly determine whether Plaintiff continues to play a significant role in international narcotics trafficking, and has instead primarily based its denial decision on the fact that certain limited representations by Mr. Joumaa are not consistent with historical information in the agency's possession.  Rather than test the integrity or relevance of its own facts about Plaintiff's present status, OFAC supports its decision through reference to historic events (decade-old fact-findings that led to a 2011 Indictment), its own prior actions (designations of other individuals), and an apparent intelligence feedback loop recycling the identical allegations first relied upon by OFAC to support Mr. Joumaa's initial designation.

By accepting OFAC's actions here, the Court would be consenting to statutory overreach that both threatens Congressional intent and radically expands the powers conferred upon the

executive through the Kingpin Act.  For this reason, Plaintiff seeks a declaration from this Court that Defendant Secretary of the Treasury Steven Mnuchin and Defendant OFAC (hereinafter referred to collectively as "Defendants") acted arbitrarily and capriciously, and/or in excess of their statutory authority under the Kingpin Act and the Administrative Procedure Act ("APA"), when they denied Plaintiff's request for reconsideration of his designation by OFAC and determined that he continues to play a significant role in international narcotics trafficking. Accordingly, Plaintiff seeks an order from this Court directing Defendants to rescind his OFAC designation and remove his name from OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"), as Defendants lack a lawful basis upon which to maintain Plaintiff's designation.  By taking these steps, the Court can restrain OFAC's overreach in this case, and return the agency to the important work of securing our nation's foreign policy and national security objectives in a lawful manner.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

On December 3, 1999, the President signed into law the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*.  The Kingpin Act was expressly designed to "provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902.

To accomplish this, the Kingpin Act provides authority to the Secretary of the Treasury, acting in consultation with other federal agencies, to designate "any foreign person…materially

assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker;" "any foreign person…owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker;" and "any foreign person…playing a significant role in international narcotics trafficking." 21 U.S.C. § 1904(b)(2)-(4).   Foreign persons who are designated pursuant to these authorities are subject to blocking sanctions under the Kingpin Act. 21 U.S.C. § 1904(b) ("…there are blocked as of such date, and any date thereafter, all such property and interests in property within the United States, or within the possession or control of any United States person…").

The Kingpin Act defines the operative terms used in its provisions.   For instance, a "significant foreign narcotics trafficker" is defined as "any foreign person that plays a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions pursuant to this chapter…" 21 U.S.C. § 1907(7).   Narcotics trafficking is defined as "any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C. § 1907(3).   Narcotic drugs, controlled substances, and listed chemicals are given the meanings conferred to them in 21 U.S.C. § 802. 21 U.S.C. § 1907(4).

OFAC—acting pursuant to a delegation of authority from the Secretary of the Treasury— is authorized to prescribe such regulations as may be necessary "[t]o carry out the purposes" of the Kingpin Act. 21 U.S.C. § 1905(a).   Accordingly, OFAC promulgated the Foreign Narcotics Kingpin Sanctions Regulations ("FNKSR"), 31 C.F.R. Part 598, which implement the provisions of the Kingpin Act.   31 C.F.R. § 598.803.   Section 598.201 of the FNKSR states that "specially

designated narcotics trafficker[s] [are] subject to any and all sanctions authorized by the Foreign Narcotics Kingpin Designation Act…[and] will remain in effect until revoked by the President…, waived by the President,…or revoked by the Secretary of the Treasury…"   For purposes of the FNKSR, a "specially designated narcotics trafficker" ("SDNT") is defined as "significant foreign narcotics traffickers" and those foreign persons designated pursuant to 21 U.S.C. § 1904(b)(2)-(4). 31 C.F.R. § 598.314.   The FNKSR's definitions of narcotics trafficking and narcotic drugs, controlled substances, and listed chemicals are consistent with the definitions of those terms in the Kingpin Act. 31 C.F.R. §§ 598.310 and 598.309.   Section 598.202 of the FNKSR blocks all property and interests in property within the United States or within the possession or control of any U.S. person, which are owned or controlled by a SDNT.

The FNKSR incorporates the provisions of 31 C.F.R. Part 501, the "Reporting, Procedures and Penalties Regulations." 31 C.F.R. § 598.101 ("This part [Part 598] is separate from, and independent of, the other parts of this chapter…with the exception of part 501 of this chapter, the provisions of which apply to this part.").   As such, a person designated as a SDNT under the FNKSR "may seek administrative reconsideration of his, her, or its designation…or assert that the circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded…" 31 C.F.R. § 501.807.   Designated parties "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" and "may [also] propose remedial steps on the person's part…which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a).   OFAC will review any information provided and "may request clarifying, corroborating, or other additional information." 31 C.F.R. § 501.807(b). Following a "review of the request for reconsideration, [OFAC] will provide a written decision to the blocked person…" 31 C.F.R. § 501.807(d).

5

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Initial Designation by OFAC

Plaintiff Ayman Saied Joumaa is a citizen of Lebanon and Colombia.  On January 26, 2011, OFAC designated Plaintiff as a SDNT pursuant to the Kingpin Act for allegedly "playing a significant role in international narcotics trafficking." A.R. at 0002.  Plaintiff's designation blocked all of his property and interests in property subject to U.S. jurisdiction and prohibited U.S. persons from engaging in transactions with him.  According to OFAC's press release announcing the designation, Plaintiff was alleged to have "coordinated the transportation, distribution, and sale of multi-ton shipments of cocaine from South America and [] laundered the proceeds from the sale of cocaine in Europe and the Middle East, according to investigations led by the Drug Enforcement Administration (DEA)." A.R. at 0065.  Further, OFAC alleged that Plaintiff "and his organization launder proceeds from their illicit activities – as much as $200 million per month – through various channels, including bulk cash smuggling operations and Lebanese exchange houses." *Id*.  OFAC identified three (3) specific Lebanese exchange houses through which Plaintiff and his organization "launder illicit proceeds": 1) Hassan Ayash Exchange Company; 2) Ellissa Exchange Company; and 3) New Line Exchange Trust Co. *Id*.

### B.   Plaintiff's Indictment

On June 17, 2011, a DEA agent submitted an affidavit in support of a criminal complaint in the United States District Court for the Eastern District of Virginia which charged Plaintiff with conspiracy to distribute more than five (5) kilograms of cocaine for the purpose of unlawful importation into the United States. A.R. at 0070-0076.  The affidavit entirely relies on and details information provided by three (3) confidential sources, two (2) of whom were pending sentencing

at the time. *Id*.   According to the affidavit, each of the three (3) confidential sources by approximately 2008 had ceased "utilizing the laundering services of Joumaa." *Id*. at 0075. According to these confidential sources, "Joumaa…would arrange for the laundering of drug related proceeds from Mexico, Europe (predominantly Spain), and West Africa to Colombia." *Id*. at 0073.

On November 3, 2011, a grand jury in the Eastern District of Virginia charged Plaintiff with conspiracy to distribute five (5) or more kilograms of cocaine knowing and intending that it would be unlawfully imported into the United States, as well as conspiracy to commit money laundering.[2] A.R. at 0077-0083.   The Indictment alleged that Plaintiff "coordinated the shipment of at least tens of thousands of kilograms of cocaine from Colombia, through Central America and Mexico, to the United States, including but not limited to 85,000 kilograms of cocaine shipped from Colombia for sale to Los Zetas drug cartel from in and around 2005 through in and around 2007." *Id*. at 0079-0080.   In addition, the Indictment alleged that Plaintiff "laundered at least hundreds of millions of dollars in proceeds of illegal drug sales in the United States and elsewhere, including but not limited to an amount in excess of $250 million in drug related proceeds representing cocaine sales in the United States, Mexico, Central America, and Europe, which [Plaintiff] laundered from in and around 1997 through in and around September 2010." *Id*. at 0080.

---

[2] Defendants state that "Joumaa has not *returned* from Lebanon to face these charges," thereby implying that he is a fugitive from justice. Defs. Mot. at 8 (Dkt. 10) (emphasis added).   This is misleading: Plaintiff has never before traveled to the United States, and Defendants acknowledge his long-term residency in Lebanon, which began prior to his Indictment.   Plaintiff is not appropriately characterized as a fugitive, despite Defendants' desire to portray him as one.

### C.       Plaintiff's Reconsideration Petition

On May 18, 2016, Plaintiff requested administrative reconsideration of his designation pursuant to OFAC's delisting procedures at 31 C.F.R. § 501.807. A.R. at 0087-0090.  In his request, Plaintiff "dispute[d] the factual basis underlying his continued designation and assert[ed] that an insufficient basis exist[ed] for the designation." *Id.* at 0087.  In addition, Plaintiff stated that "if [he] has engaged in certain conduct that gave rise to his designation under the Kingpin Act, he is prepared to work in good-faith with OFAC to exact a change in circumstances that would lead to rescission of his designation." *Id.*

On May 18, 2016, Plaintiff also requested the administrative record underlying his designation, including disclosure of "any and all portions of the administrative record relied upon in the designation process, as well as any releasable exhibits attached to the administrative record." A.R. at 0092.  Plaintiff noted that "the disclosure of such information" will "afford[] [Plaintiff] a meaningful opportunity to respond to OFAC and to effectively rebut the basis for his Kingpin Act designation…[and/or] remediate any conduct that may have led to his designation." *Id.* at 0093.

On July 27, 2016, OFAC sent Plaintiff a questionnaire seeking information regarding his relationship with specified individuals and entities. A.R. at 0100-0105.  Plaintiff responded to this questionnaire through submissions dated October 25, 2016, and April 24, 2017.  A.R. at 0106-0392, 0397-1392.   Together, Plaintiff's responses provided information and documentation evidencing Plaintiff's legitimate business activities during the relevant period, as well as his relationships (or lack thereof) with the 150 individuals and entities identified in OFAC's questionnaire.

On November 18, 2016, OFAC provided Plaintiff with a redacted version of the administrative record upon which Plaintiff's Kingpin Act designation was based, as well as a non-privileged and unclassified summary of otherwise privileged information contained within the administrative record. *Id.* at 0026-0066. The entire section of the administrative record titled "Basis for Designation," and presumptively detailing the factual allegations underlying Plaintiff's designation, was redacted and OFAC's non-privileged and unclassified summary comprised a total of four (4) sentences that essentially repeated the broad and conclusory allegations of OFAC's press release announcing Plaintiff's initial designation.

On August 24, 2017, Plaintiff filed a letter with OFAC noting that those disclosures failed to "fulfill [the agency's] due process obligations to provide adequate notice as to the basis for [Plaintiff's] designation…and OFAC's maintenance of that designation…" A.R. at 1394-1403. In addition, Plaintiff noted that information obtained from other federal agencies showed a "lack of any contemporary evidence linking [Plaintiff] to narcotics trafficking activities," as "[n]one of the allegations made against [Plaintiff] evidence involvement in narcotics trafficking activities beyond 2008." *Id.* at 1397. Plaintiff requested that OFAC either take steps "to rescind [his] designation or, in the alternative, supply contemporary factual allegations that could serve as a legal basis to maintain [his] current designation." *Id.* at 1402. Absent such measures, Plaintiff stated that he would "take legal action demanding the immediate rescission of his designation . . . ." *Id.*

On October 16, 2017, OFAC responded to Plaintiff's letter noting that his reconsideration request remained under review and that "the reconsideration decision for all such requests requires U.S. federal government inter-agency consultation and legal review," which "ha[d] delayed [OFAC's] response time." A.R. at 1418. Following more than eighteen (18) months without a

decision on his reconsideration petition, Plaintiff filed this lawsuit. Complaint for Declaratory and Injunctive Relief ("Complaint" or "Compl."), ECF No. 1 (Dec. 27, 2017).

### D.    OFAC's Denial of Plaintiff's Reconsideration Request

On March 2, 2018, OFAC denied Plaintiff's request for reconsideration. A.R. at 0001-0021, 1612-14.  OFAC's denial letter summarily concludes that "OFAC does not find credible Mr. Joumaa's claims . . . that he is not 'currently engaged in conduct that contributes to narcotics trafficking or money laundering in support of narcotics trafficking.' Accordingly, Mr. Joumaa's request for reconsideration of his designation is denied because he continues to meet the criteria for designation under the Kingpin Act." A.R. at 1612-1614.  In its evidentiary memorandum, OFAC concluded "JOUMAA continues to meet the criteria for designation as an SDNT pursuant to the Kingpin Act.  Information available to OFAC indicates that JOUMAA continues to play a significant role in international narcotics trafficking.  Therefore, JOUMAA's reconsideration request and removal from the SDN List should be denied." A.R. at 0017.

On March 9, 2018, OFAC provided a heavily redacted version of the administrative record upon which it denied Plaintiff's reconsideration petition, as well as a non-privileged and unclassified summary of otherwise privileged information contained in the administrative record. A.R. at 0001-0021, 1615-1616.

Section IV of the administrative record—titled "Arguments"—served as the foundation for OFAC's denial decision and its determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act.  OFAC therein based its denial of Plaintiff's reconsideration petition on limited, selective credibility determinations that were broadly applied to dismiss all of Plaintiff's representations before the agency.  For instance, OFAC determined that "JOUMAA

unpersuasively denies that he was involved in narcotics trafficking at any time"; "JOUMAA continues to be involved in money laundering activities, and his claims to the contrary are not credible"; "JOUMAA's claims about his relationships, business or otherwise, with previously designated individuals are not credible"; and "Joumaa's remaining arguments are without merit." *Id*. at 0004-0012. OFAC even titled the concluding section detailing the basis for its denial of Plaintiff's reconsideration petition as "Other Information Relevant to Credibility," highlighting the centrality of Plaintiff's credibility (or alleged lack thereof) to the agency's denial of his reconsideration request and finding that he continues to meet the criteria for designation under the Kingpin Act. *Id*. at 0016.

### E.    Plaintiff's Amended Complaint

On March 9, 2018, Defendants filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 7 (March 9, 2018).  On April 6, 2018, Plaintiff amended his complaint to take into account OFAC's denial of his reconsideration petition and determination that he continues to meet the criteria for designation under the Kingpin Act. Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint" or "Am. Compl."), ECF No. 9 (April 6, 2018).

Plaintiff's Amended Complaint contends that OFAC's denial of Plaintiff's reconsideration petition is arbitrary and capricious and therefore in violation of the APA because Defendants denied that request on the basis of credibility determinations, as opposed to facts to showing that he continues to meet the criteria for designation under the Kingpin Act, and because the administrative record produced by Defendants does not support a finding that the circumstances resulting in Plaintiff's designation remain applicable and that Plaintiff continues to play a significant role in international narcotics trafficking. *Id*. at ¶¶ 38-43.

In addition, Plaintiff argued that Defendants' determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act constitutes arbitrary and capricious agency action and is in excess of statutory authority in violation of the APA and the Kingpin Act because OFAC's administrative record underlying its denial of Plaintiff's reconsideration request fails to evidence that Plaintiff is "playing a significant role in narcotics trafficking." *Id.* at ¶¶ 44-51.

Finally, Plaintiff claims that Defendants' denial of his reconsideration request violates Fifth Amendment due process rights and constitutes arbitrary and capricious agency action under the APA because Defendants failed to provide Plaintiff with adequate notice of the factual basis on which Defendants denied his petition and determined that he continues to meet the criteria for designation under the Kingpin Act, and failed to identify how the information contained in OFAC's unprivileged and unclassified summary of otherwise privileged information corresponds to the redacted portions of the administrative record found in, or referenced by, OFAC's evidentiary memorandum. *Id.* at ¶¶ 52-58.

Plaintiff seeks declaratory and injunctive relief from this Court including, but not limited to, an order or declaration mandating that Defendants rescind Plaintiff's designation under the Kingpin Act and remove his name from OFAC's SDN List. Am. Compl., Relief Requested.

## LEGAL STANDARDS

## I.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary

judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

Where a party seeks review of agency action under the APA, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F.Supp.3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). In such cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 117 (quoting *Kadi v. Geithner*, 42 F.Supp.3d 1, 8 (D.D.C. 2012).

### B.      Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint, it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017)(quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). In resolving a Fed. R. Civ. P. 12(b)(6) motion, "the court must treat the complaint's factual allegations – including mixed questions of law and facts – as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Williams-Jones v. LaHood*, 656 F.Supp.2d 63, 67 (D.D.C. 2009) (citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003)); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 241 (D.C. Cir. 2002). To survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief and the court must accept as true all material factual allegations in the complaint.

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007).  A court "must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is very remote and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008); see generally *Twombly*, 550 U.S. at 554 (2007).

## DISCUSSION

**I.**  **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND II BECAUSE DEFENDANTS' DENIAL OF PLAINTIFF'S RECONSIDERATION REQUEST AND ITS FINDING THAT PLAINTIFF CONTINUES TO MEET THE CRITERIA FOR DESIGNATION UNDER THE KINGPIN ACT IS ARBITRARY AND CAPRICIOUS**

Defendants' denial of Plaintiff's reconsideration petition and determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act constitutes an arbitrary and capricious agency action, finding, or conclusion under 5 U.S.C § 706(2)(A), as the administrative record fails to provide support for Defendants' conclusions and instead evidences Defendants' reliance on factors not contemplated by, and unrelated to, the designation criteria of the Kingpin Act.

A reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)  While the scope of review under the APA "is narrow and a court is not to substitute its judgment for that of the agency, . . . the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).  An agency's decision is entitled to a "presumption of

regularity…[b]ut that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

In applying the "arbitrary and capricious" standard, "a court should ascertain whether the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Empresa Cubana Exportadora v. U.S. Dep't of Treasury*, 516 F.Supp.2d 43, 53 (D.D.C. 2007) (quoting *Bowman Transp., Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281, 286 (1974). A court's review should be no different in cases involving U.S. national security or foreign policy. *See Holy Land Found. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (finding that the reviewing court must still "review the agency record to determine whether the agency's decision was supported by a rational basis.").

Here, Defendants have denied Plaintiff's reconsideration request and determined that Plaintiff continues to meet the criteria for designation under the Kingpin Act on the basis of a credibility determination regarding Plaintiff's representations during the reconsideration matter. Plaintiff's credibility (or alleged lack thereof) is not however a factor that Congress intended Defendants to consider in designating a party under 21 U.S.C. § 1904(b)(4).

The Secretary of the Treasury is authorized to designate any foreign person "playing a significant role in international narcotics trafficking." 21 U.S.C. § 1904(b)(4). The Kingpin Act defines "narcotics trafficking" as "any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C.

§ 1907(3).  By its plain language, § 1904(b)(4) requires Defendants to find that (1) the conduct at issue is current and/or ongoing; and (2) the conduct relates to international narcotics trafficking, as defined by the Kingpin Act.  The plain language of § 1904(b)(4)—including verb tense—bars Defendants from designating on the basis of conduct that is historical or unrelated to the illicit cultivation, production, manufacture, distribution, sale, financing, or transportation of narcotic drugs. *See e.g.*, 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise – words used in the present tense include the future as well as the present . . .").

Defendants fail on both grounds.  First, Defendants do not show that Plaintiff's activities are current and/or ongoing, and thus fail to support their finding that he continues to meet the criteria for designation under the Kingpin Act.  Instead, Defendants make credibility determinations regarding Plaintiff's representations that he is not "currently engaged in conduct that contributes to narcotics trafficking or money-laundering in support of narcotics trafficking," as well as with respect to his representations concerning historical conduct or conduct unrelated to narcotics trafficking. A.R. at 1612-1614 ("OFAC does not find credible Mr. Joumaa's claims . . . that he is not 'currently engaged in conduct that contributes to narcotics trafficking or money-laundering in support of narcotics trafficking.'"); *Id*. at 0001-0021.

Defendants' evidentiary memorandum brings this failure into sharp relief.  Section IV of the memorandum identifies the arguments presented by Plaintiff during the reconsideration matter and contends that these arguments "fail to demonstrate a basis for removal from the SDN List." A.R. at 0004.  Section IV of that memorandum also comprises the totality of factors relied upon to deny Plaintiff's reconsideration petition and to determine that Plaintiff continues to meet the criteria for designation under the Kingpin Act.

16

However, Section IV makes no effort to identify the factual basis upon which OFAC determined that Plaintiff continues to "play a significant role in international narcotics trafficking." Defendants instead substituted those factual findings with unrelated (and statutorily irrelevant) findings that Plaintiff's arguments and evidence presented during the course of the reconsideration matter are not credible, and thus "fail to demonstrate a basis for removal from the SDN List." *Id*. Defendants sole attempt to show that Plaintiff "meets the criteria for designation under the Kingpin Act," comes through a summary assertion that Plaintiff failed to demonstrate a basis for removal. *Id*.  Failure to demonstrate a basis for removal, however, is not a consideration for finding that a foreign person continues to play a significant role in international narcotics trafficking.

Moreover, Plaintiff's alleged failure to demonstrate a basis for removal wholly relies on Plaintiff's alleged lack of credibility regarding either historical conduct or conduct unrelated to narcotics trafficking, neither of which themselves serve as a lawful basis for designation under 21 U.S.C. § 1904(b)(4).  The headings contained within Section IV identify the bases for Defendants' denial of Plaintiff's reconsideration request and determination that Plaintiff continues to meet the criteria for designation.   Subsection 1 of Section IV of the administrative record states that "JOUMAA unpersuasively denies that he was involved in narcotics trafficking activities at any time."[3]  Leaving aside Defendants' mischaracterization of Plaintiff's argument during the

---

[3] Defendants have misinterpreted Plaintiff's contentions during the reconsideration matter.  In Plaintiff's May 18, 2016 submission cited by Defendants, Plaintiff stated that he "does not play a role in narcotics trafficking activities" and that "if [Plaintiff] has engaged in certain conduct that gave rise to his designation under the Kingpin Act, he is prepared to work in good-faith with OFAC to exact a change in circumstances that would lead to rescission of his designation."  A.R. at 0087. Plaintiff was consistent throughout his reconsideration matter that he was involved in legal money exchange activities and that he did not always know the counter-parties with whom he was dealing or the purposes of any given transaction.  However, Plaintiff also consistently argued that he ceased all such money exchange activities in the years prior to his reconsideration request and that this evidenced: (1) that an insufficient basis existed for the *continued* maintenance of his designation; and (2) that he had exacted a change in circumstance meriting the rescission of his designation.

reconsideration matter, it is unclear how Defendants' reliance on historical conduct can serve to support a lawful designation under the Kingpin Act, insofar as § 1904(b)(4) requires a finding that Plaintiff is "*playing* a significant role in international narcotics trafficking." 21 U.S.C. § 1904(b)(4) (emphasis added).

Defendants repeat this same fundamental error in the next subsection of the administrative record, but for an altogether different reason.  Subsection 2 of Section IV states that "JOUMAA continues to be involved in money laundering activities, and his claims to the contrary are not credible."  A.R. at 0007.  Defendants again make a credibility determination regarding Plaintiff's representations to support their finding that Plaintiff continues to meet the criteria for designation, but this time on the basis of conduct that is unrelated to narcotics trafficking.  Plaintiff's alleged involvement in money laundering activities is statutorily irrelevant for purposes of the Kingpin Act absent any connection to narcotic drugs or controlled substances.  Defendants, however, never identify what these purported "laundering" activities consist of, nor whether such activities have any connection to narcotic drugs, controlled substances, or listed chemicals.  To support a designation, the Kingpin Act requires that 1) there is an illicit[4] activity; 2) the activity falls within certain categories of conduct identified in § 1907(3); and 3) the activity is related to narcotic drugs or controlled substances. *See* 21 U.S.C. § 1907(3).  Thus, OFAC's finding under Subsection 2 has no rational connection to the designation criteria outlined at § 1904(b)(4).

Subsections 3 and 4 of Section IV of the evidentiary memorandum replicate these errors.  Subsection 3 states that Plaintiff's "claims about his relationships, business or otherwise, with previously designated individuals are not credible." A.R. at 0009-0011.  In making this finding,

_____

[4] "Illicit" is commonly understood as being illegal or improper. <u>Black's Law Dictionary</u> (10th ed. 2015).

OFAC selectively references six (6) of the 150 relationships of which OFAC inquired to say that Plaintiff is not credible. *Id*. at 0009-0012.  OFAC did not indicate any credibility objections with respect to the other 144 relationships that Plaintiff described to the agency.

The representations that OFAC took direct issue with in Subsection 3 concerned Plaintiff's relationships with Pedro Claver Mejia Salazar, his sons, and several other individuals.  A.R. at 0009-0011.  According to OFAC, despite Plaintiff's acknowledgement that he formerly had a business relationship[5] with Pedro Claver Mejia Salazar, Plaintiff failed to admit that "he engaged in any illicit activities such as money laundering with or on behalf of" Pedro Claver Mejia Salazar[6] or his sons Victor Gabriel and Juan Carlos Mejia Alazate. *Id*. at 0010.  Plaintiff's denial of any illicit dealings with such parties "are not credible" according to OFAC. *Id*.  OFAC's reasons for finding that Plaintiff is not credible with respect to his representations about the other three (3) individuals is fully redacted. *Id*. at 0011-0012.

As a result, Subsection 3 is likewise reliant on the kind of credibility determinations OFAC made to conclude that Plaintiff continues to meet the criteria for designation under the Kingpin Act.  As explained however, Plaintiff's credibility (or alleged lack thereof) is not a criterion for designation under the Kingpin Act.  Further, Defendants are making such credibility determinations with respect to alleged historical conduct—i.e., historical relationships with certain "previously designated individuals"—as opposed to current or ongoing conduct, which OFAC lacks evidence of.  Such use of "credibility" is not supported by the Kingpin Act.

---

[5] OFAC throughout its evidentiary memorandum conflates Plaintiff's legitimate foreign currency exchange business with illicit money laundering.

[6] The administrative record also shows that Mejia Salazar pled guilty in 2014 to the laundering of drug proceeds, and that his laundering activities occurred between May 2009-June 2012.  *Id*. at 0010; 1538.

Subsection 4 of Section IV of the administrative record states that "[t]he information relied upon by OFAC is reliable." A.R. at 0012.  Defendants argue that "OFAC considers the information and sources in the DEA reports of investigation as reliable based on DOJ's and DEA's promulgated policies for developing, using, and managing sources or informants . . ." *Id.* at 0013.  But whether or not the information that served as the initial basis to designate Plaintiff is credible has no bearing on whether Plaintiff continues to meet the criteria for designation under the Kingpin Act.  Close to a decade has elapsed since the DEA investigated Plaintiff, and the allegations from that investigation have likewise aged.  Even if the Court were to accept as true all allegations made by Defendants in its initial designation of Plaintiff in January 2011, those allegations would nevertheless fail as a basis for finding that Plaintiff "*continues* to play a significant role in international narcotics trafficking." (emphasis added).  The plain language of the Kingpin Act provides no support for the idea that historical conduct—absent any findings of current activities related to narcotics trafficking—is sufficient support for designation under 21 U.S.C. § 1904(b)(4).

None of the remaining subsections of OFAC's evidentiary memorandum fill the gaps from Defendants' denial decision and determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act.  Subsection 5 identifies the basis for OFAC's determination that certain Lebanese legal proceedings are not relevant to Plaintiff's reconsideration request; Subsection 6 states that Plaintiff's "remaining arguments are without merit"; and Subsection 7 acknowledges receipt of submissions made by Plaintiff during the course of the reconsideration matter. A.R. at 0013-0016.

Finally, Subsection 8, titled "Other Information Relevant to Credibility," highlights the central focus of Defendants' administrative record—their assertion that Plaintiff lacks credibility and that their determination about his credibility supports the conclusion that his reconsideration

petition should be denied and that he continues to meet the criteria for designation under the Kingpin Act.  As discussed above, this is the fundamental error pervading the entire administrative record.  In order for a party to be designated under the Kingpin Act, there must be a finding that the party is a foreign person that plays a significant role in illicit activities involving the cultivation, production, manufacture, distribution, sale, financing, or transportation of narcotic drugs, controlled substances, or listed chemicals. 21 U.S.C. § 1907(3).  That finding is not met here.

Even if the Court were to set aside the issue of whether credibility is relevant to a Kingpin Act designation, OFAC's evidence nevertheless fails to demonstrate a lawful basis for Plaintiff's designation under the Kingpin Act.  The evidence put forth by the agency is either (1) historical in nature; or (2) unrelated to narcotics trafficking, as by the Kingpin Act.  OFAC's wholesale reliance on such evidence separately constitutes arbitrary and capricious agency action, as OFAC's decision was not "based on a consideration of the relevant factors" but instead "relied on factors which Congress ha[d] not intended it to consider." *See Empresa Cubana Exportadora v. U.S. Dep't of Treasury*, 516 F.Supp.2d 43, 53 (D.D.C. 2007) (quoting *Bowman Transp., Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

In seeking summary judgment, Defendants state that "OFAC's conclusion is entirely consistent with the evidence before the agency," specifically pointing to OFAC's findings that— "subsequent to his designation"—Plaintiff "is associated with a designated SDNT individual in the pick-up of bulk drug proceeds in Europe to launder to Colombia"; that Plaintiff "oversees money laundering operations between Lebanon, Colombia, and Venezuela"; and that Plaintiff "is noted to currently be the leader of a group of money launderers." Defs. Mot. at 22-23, A.R. at 1617. But if these particular findings are central to OFAC's conclusion that Plaintiff continues to meet

the criteria for designation under the Kingpin Act, then OFAC's conclusion that Plaintiff continues to meet the criteria for designation under the Kingpin Act cannot lawfully be sustained.

This is so for two reasons.  First, the latter two findings have no purported connection to narcotics trafficking, as required by the Kingpin Act.  Instead, OFAC made a factual allegation that Plaintiff is engaged in certain money laundering activities (i.e., "oversees money laundering operations" and "noted to currently be the leader of a group of money launderers") without any description of how such activity is occurring, or what it is related to.  In other words, OFAC does not connect Plaintiff's alleged laundering activities to narcotics trafficking, and thus fails to connect it to the criteria for designation under the Kingpin Act.  Defendants ignore this oversight on OFAC's part, but it is clear that allegations of money laundering alone do not suffice for purposes of the Kingpin Act.  Instead, the laundering must be expressly related to narcotics trafficking in order to serve as a lawful basis for designation under the Kingpin Act.[7]

Second, while OFAC's finding that Plaintiff "is associated with a designated SDNT in the pick-up of bulk drug proceeds in Europe to launder to Colombia" is suggestive of a connection to narcotics trafficking, Defendants' presentation of this evidence is highly misleading.  Defendants take this sentence from the non-privileged and unclassified summary of otherwise non-privileged information contained in the administrative record.  But the information contained in OFAC's non-

---

[7] Plaintiff urges the Court to review the relevant exhibits that provide support for these allegations as well.  While such exhibits are not accessible to Plaintiff, Plaintiff is concerned that OFAC is using claims regarding Plaintiff's alleged historical activities—framed in the present tense, but nonetheless ultimately originating from Plaintiff's 2011 designation—to support these allegations. In other words, OFAC may be deriving information from an effective intelligence feedback loop, where its allegations in support of Plaintiff's 2011 designation are now being recycled in current news articles, Congressional testimonies, law enforcement reports, etc.  Plaintiff is concerned that many if not all of the allegations withheld from disclosure reuse old allegations to support OFAC's determination that Plaintiff continues to play a significant role in international narcotics trafficking.

privileged and unclassified summary cannot stand on its own, but rather must correspond to some redacted portion of the evidentiary memorandum.  As such, if the evidentiary memorandum does not purport to show that Plaintiff is engaged in money laundering in support of narcotics trafficking, then the Court cannot use isolated factual allegations contained therein to buttress conclusions that the agency itself has not made.  *See Securities Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.").

While Plaintiff lacks access to the redacted portions of the evidentiary memorandum, it is likely that this particular finding corresponds to the redacted portions of Subsection 2 of Section IV of the evidentiary memorandum.  But, as discussed above, Subsection 2 is directed at attacking Plaintiff's credibility as to his involvement in money laundering, including by finding that Plaintiff "continues to be involved in money laundering activities . . . ." A.R. at 0007.  Subsection 2 does not show (and does not even purport to show) that Plaintiff "continues to be involved in money laundering activities" in support of narcotics trafficking.  Instead, OFAC claims this particular finding as evidence that Plaintiff is "involved in money laundering activities and his claims to the contrary are not credible." *Id.*  Defendants seek to import a meaning into this particular finding that is simply not supported by the evidentiary memorandum.  The Court should not substitute a basis for the agency's decision that was not supplied by OFAC itself.[8]

---

[8] The Court can underscore the proper legal standard pursuant to which OFAC makes determinations under the Kingpin Act and remand the issue back to the agency for re-evaluation

Finally, Defendants' administrative record concludes that Plaintiff "continues to meet the criteria for designation as an SDNT pursuant to the Kingpin Act. Information available to OFAC indicates that [Plaintiff] continues to play a significant role in international narcotics trafficking." A.R. 0017. The administrative record, however, does not provide support for this finding, and Defendants' conclusion otherwise constitutes arbitrary and capricious agency action in violation of the APA and the Kingpin Act, insofar as it relies upon factors Congress did not intend to be considered, and is not in accordance with law.

The Court should therefore deny Defendants' Motion for Summary Judgement as to Counts I, II, and III of the Amended Complaint, and grant summary judgment in favor of the Plaintiff as to Counts I and II of the Amended Complaint.

## II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE DEFENDANTS ACTED IN EXCESS OF THEIR STATUTORY AUTHORITY WHEN THEY MADE A FINDING THAT PLAINTIFF CONTINUES TO MEET THE CRITERIA FOR DESIGNATION UNDER THE KINGPIN ACT

"[A]n agency's power is no greater than that delegated to it by Congress." *Lyng v. Payne*, 476 U.S. 926, 937 (1986). "It is 'central to the real meaning of 'rule of law', [and] not particularly controversial' that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so.'" *Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 621 (D.C. Cir. 1992) (holding that "[a]gency actions beyond delegated authority are 'ultra vires', and courts must invalidate them.'). The APA authorizes judicial review of agency actions "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). "[A]n essential function of [a court's review] under the APA is determining whether an agency acted within the scope of its authority."

---

of the evidence in that light. Plaintiff nevertheless contends that remand would prove futile, as the evidence before the agency cannot support a lawful basis for designation.

*Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 801 (10th Cir. 2010) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994).

Defendants determined that Plaintiff "continues to meet the criteria for designation as an SDNT pursuant to the Kingpin Act." A.R. 0017.  This determination was made pursuant to 21 U.S.C. § 1904(b)(4),[9] which authorizes the Secretary of the Treasury to designate a foreign person that is "playing a significant role in international narcotics trafficking."  For purposes of the Kingpin Act, "narcotics trafficking" is defined as "any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C. § 1907(3).  A plain reading of § 1904(b)(4) indicates that the Secretary of the Treasury may designate a foreign person if that person is engaged in ongoing conduct that is illicit and relates to narcotics trafficking.  By determining that Plaintiff meets the criteria for designation on the basis of either historical conduct or conduct unrelated to narcotics trafficking, Defendants acted beyond the scope of § 1904(b)(4) and thus in excess of their statutory authority under the Kingpin Act.

General rules of statutory interpretation support Plaintiff's reading.  The Supreme Court has held that the tense of a verb in a given statute is a part of the statute's plain language. *See Ingalls Shipbuilding v. Director, OWCP*, 519 U.S. 248, 255 (1997) (acknowledging "the use of the present tense" as part of the statute's "plain language"); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003).  Because § 1904(b)(4) of the Kingpin Act is styled in the present tense, a plain language reading indicates that a person's role in international narcotics trafficking must be

---

[9] *See* A.R. 0017 ("Information available to OFAC indicates that JOUMAA continues to play a significant role in international narcotics trafficking.").

ongoing to meet the criteria for designation.  Historical conduct does not suffice.  Defendants must instead have evidence that there is ongoing conduct meriting designation pursuant to 21 U.S.C. § 1904(b)(4).

Moreover, that conduct must involve a "significant role" in "international narcotics trafficking," which is defined by the Kingpin Act to mean "any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so." 21 U.S.C. § 1904(b)(4); 21 U.S.C. § 1907(3).  Broken down to its constituent parts, Defendants must show that a foreign person "play[s]" (1) a significant role; (2) in an illicit activity; (3) involving the cultivation, production, manufacture, distribution, sale, financing, or transportation; (4) of narcotic drugs, controlled substances, or listed chemicals, as defined at 21 U.S.C. § 802; and (5) that is "international" in scope. 21 U.S.C. § 1907(3).  The nexus between the alleged conduct and narcotics trafficking is elemental to a finding that a foreign person merits designation under § 1904(b)(4)—absent such nexus, there is no lawful authority under which to designate a foreign person pursuant to the Kingpin Act.

Defendants appear to accept this reading.  According to Defendants, "OFAC expressly explained that Joumaa's delisting request should be denied because 'according to information available to OFAC, Joumaa *continues* to meet the criteria for designation as an SDNT pursuant to the Kingpin Act' and because 'information available to OFAC indicates that Joumaa *continues* to play a significant role in international narcotics trafficking.'" Defs. Mot. at 20 (Dkt. 10) (italics added).[10]  In other words, Defendants' denial of Plaintiff's reconsideration petition and their

---

[10] This appears to be a long-standing U.S. Government position. *See e.g.*, PRESS RELEASE, OFAC Removes Jose Adan Salazar Umana from List of Drug Traffickers, U.S. Embassy in El Salvador,

finding that Plaintiff continues to meet the criteria for designation under the Kingpin Act is dependent not on Plaintiff's alleged historical conduct, but rather on OFAC's finding that Plaintiff "continues to play a significant role in international narcotics trafficking"—i.e., that Plaintiff is engaged in ongoing conduct meeting the criteria outlined at § 1904(b)(4).

It is unclear which of Defendants' arguments—identified in Section IV of OFAC's evidentiary memorandum—contend that Plaintiff is engaged in ongoing conduct that meets the criteria for designation under § 1904(b)(4).  As discussed above, the evidentiary memorandum supporting OFAC's determinations appears to be primarily directed at attacking Plaintiff's credibility rather than identifying evidence that Plaintiff "continues to play a significant role in international narcotics trafficking."  Moreover, Plaintiff's credibility is attacked solely as to his claims regarding either historical conduct or alleged ongoing conduct unrelated to narcotics trafficking (i.e., money transfers with no discernible connection to drugs or drug proceeds).  Even if Defendants sought to use Plaintiff's credibility (or alleged lack thereof) as a byway to their conclusion that Plaintiff "continues to play a significant role in international narcotics trafficking,"

---

April 7, 2017, *available at* https://sv.usembassy.gov/removal-jose-adan-salazar-umana-ofacs-kingpin-list/.  The U.S. Embassy in El Salvador issued this press release following OFAC's rescission of Jose Adan Salazar Umana's designation as a SDNT, stating in substantive part:

> OFAC's key criteria to retain an individual on the SDN List is that *the information of involvement in narcotics trafficking activity be ongoing*.  In the course of its re-investigation, OFAC found that information currently available is insufficient to support the basis that he continues to play a *significant role* in international narcotics trafficking . . .

> This removal from the OFAC SDN List should not be viewed *in the context of other possible criminal activity* in which this individual may be, or may have been, involved.  It simply means that current information held by the Department of Treasury is insufficient to demonstrate a reason to believe that he continues to play a significant role at the highest levels of international narcotics trafficking. (emphasis added).

that argument would nevertheless fail because the alleged conduct for which Defendants attack Plaintiff's credibility would not serve as an independent basis for designation under § 1904(b)(4).

Defendants' arguments otherwise are unavailing.  Defendants allege that "[b]ased on information available to the agency, OFAC . . . stated that it did not find credible Joumaa's claims that he is not currently involved in narcotics trafficking." Defs. Mot. at 28 (Dkt. 10).  Plaintiff acknowledges that this is OFAC's conclusion, but the arguments in support of OFAC's determination are devoid of detail or indication as to how the agency arrived at this conclusion. To the extent Plaintiff can piece together what Defendants view as the evidence supporting their conclusion, that evidence is insufficient for purposes of the Kingpin Act, as it relies on Plaintiff's initial 2011 designation; the 2011 Indictment and the affidavit supporting the criminal complaint which preceded that Indictment; Plaintiff's representations regarding his prior relationship with previously designated SDNTs; and Plaintiff's purported failure to rebut OFAC's allegations regarding his alleged historical conduct. A.R. at 0004-0016; *see Zevallos v. Obama*, 10 F.Supp.3d 111, 122 (D.D.C. 2014) (noting OFAC's reliance on contemporaneous evidence, including "evidence pointing to [the designee's] involvement with drug trafficking itself, as well as his connection to the laundering and management of assets tied to drug trafficking . . .)  All of these evidentiary bases are historical in nature and thus cannot serve to meet the criteria for designation under § 1904(b)(4).

Defendants resort to a final argument that even if OFAC "erred in its analysis of some of the evidence before it . . . any such error would be harmless and therefore insufficient to warrant the relief sought by Joumaa." Defs. Mot. at 23 (Dkt. 10).  However, Defendants' error is more fundamental than mere misjudgment of the evidence submitted by Plaintiff as part of the reconsideration matter: Defendants have misjudged the very statutory standard under which any

such evidence should be considered in the first instance.  Even if OFAC's evidence and its analysis of such evidence were unerring, the evidence in the administrative record would nevertheless provide no lawful basis upon which to determine that Plaintiff continues to play a significant role in international narcotics trafficking and thus meets the criteria for designation under § 1904(b)(4).

It is for this reason that Defendants acted beyond the scope of the authority Congress bestowed upon them through the Kingpin Act.  There are no facts identified in the administrative record that would support a finding that Plaintiff continues to meet the criteria for designation under the Kingpin Act.  As such, Defendants exceeded the scope of their statutory authority and thus violated the APA in determining that Plaintiff continues to meet the criteria for designation under the Kingpin Act.

Accordingly, this Court should deny Defendants' Motion for Summary Judgment as to Count III of the Amended Complaint, and instead, should grant summary judgement in favor of the Plaintiff as to that Count.

### III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV BECAUSE DEFENDANTS FAILED TO PROVIDE ADEQUATE NOTICE OF THE FACTUAL BASIS FOR DENYING HIS RECONSIDERATION PETITION AND DETERMINING THAT HE CONTINUES TO MEET THE CRITERIA FOR DESIGNATION UNDER THE KINGPIN ACT

Defendants have violated Plaintiff's Fifth Amendment due process rights and have acted contrary to the APA by failing to provide him with adequate notice of the factual basis upon which Defendants denied his reconsideration request and determined that he continues to meet the criteria for designation under the Kingpin Act.  Plaintiff respectfully requests the Court grant summary judgment as to Count IV and order Defendants to disclose the evidence underlying Defendants'

findings in order to provide Plaintiff with a meaningful opportunity to respond to such evidence, consistent with the Due Process Clause of the Fifth Amendment and the APA.

> **A.     Defendants Violated Plaintiff's Due Process Rights by Failing to Provide Adequate Notice as to Their Denial of Plaintiff's Reconsideration Request and Their Determination that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act**

Due process "requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).  Constitutionally adequate due process mandates that persons be afforded "the opportunity to be heard . . . in a meaningful manner." *Mathews*, 424 U.S. at 333 (1976).  This requirement applies to OFAC designations, including those made pursuant to the Kingpin Act.  *See e.g.*, *Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015); *Fares v. Smith*, 249 F.Supp.3d 115 (D.D.C. 2017).  In such cases, OFAC must "give the deprived party an understanding of the allegations against it so that it has the opportunity to make a meaningful response." *Kindhearts for Charitable Humanitarian Dev. v. Geithner*, 647 F.Supp.2d 857, 902 (N.D. Ohio 2010).

Generally, the D.C. Circuit has found that the Government's provision of the unclassified administrative record underlying a designation suffices for purposes of due process.  *See Fares v. Smith*, 249 F.Supp.3d 115, 122-23 (D.D.C. 2017) (citing *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. 2003) and *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001)).  However, none of the relevant case law has determined "whether an administrative decision relying critically on undisclosed classified material would comport with due process because in none was the classified record essential to uphold [a] []

designation." *Fares*, 249 F.Supp.3d at 123 (quoting *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220, 231 (D.C. Cir. 2010).

Where the classified record is essential to supporting OFAC's determination, the Government may be required to make disclosures that "provid[e] [the designee] with a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence" in any administrative challenge to such designation. *Zevallos v. Obama*, 10 F.Supp.3d 111, 117 (D.D.C. Cir. 2014). Other courts have found, for instance, that "there may be means of providing information to the potential designee that do not implicate national security." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 973 (9th Cir. 2012) (noting further that "an unclassified summary [of the classified portions of the administrative record], by definition, does not implicate national security because it is unclassified."). Such methods and means are critical since "[w]ithout disclosure of classified information, the designated entity cannot possibly know how to respond to OFAC's concerns, . . . [and] even simple factual errors may go uncorrected despite potentially easy, ready, and persuasive explanations." *Id*. at 982. Moreover, the disclosure of classified information can help achieve OFAC's own policy objectives, insofar as "OFAC . . . may benefit from the resulting information provided by the designated entity." *Id*. at 983.

Defendants appear to recognize this latter requirement, as evidenced by their provision of a non-privileged and unclassified summary of otherwise privileged information contained within the administrative record. However, for the reasons indicated below, Defendants' non-privileged and unclassified summary—as well as the broader administrative record to which it is a part—fails to provide adequate notice to Plaintiff as to the basis for OFAC's determination that he continues to meet the criteria for designation under the Kingpin Act and denies Plaintiff a meaningful opportunity to be heard, in violation of the Due Process Clause of the Fifth Amendment.

First, to the extent that Defendants have alleged sufficient facts to support their determination that Plaintiff meets the criteria for designation under the Kingpin Act, those facts remain entirely obscure to Plaintiff—hidden within the redacted portions of the administrative record and given mere conclusory treatment in the non-privileged and unclassified summary of otherwise privileged information contained in the administrative record.

Although Defendants allege that "[i]nformation available to OFAC indicates that Joumaa continues to play a significant role in international narcotics trafficking," Plaintiff remains skeptical as to whether the administrative record reflects (or even purports to reflect) this information or whether the record adequately explains the agency's assessment of this information in light of the criteria for designation under the Kingpin Act.  Defs. Mot. at 20 (Dkt. 10) (quoting A.R. at 0017).   To the extent that the administrative record does provide this information, as well as the agency's assessment of this information in light of the criteria for designation under the Kingpin Act, such information has clearly not been made available to Plaintiff, thereby nullifying his opportunity to meaningfully respond to it.

Second, OFAC's non-privileged and unclassified summary of otherwise privileged information contains nothing more than conclusory allegations for which rebuttal is impossible, particularly where, as evident from the administrative record, OFAC will treat any denials as a negative mark during Plaintiff's reconsideration petition.  For instance, OFAC's non-privileged and unclassified summary states that "[a]s of June 2016, Ayman JOUMAA is noted to currently be the leader of a group of money launderers…[and] is noted to allegedly move $200 million dollars a month on behalf of a designated entity." A.R. at 1617.  No substantive rebuttal is possible to such broad, conclusory allegations, particularly where any evidentiary basis for such claims is excised from the portions of the administrative record available to Plaintiff.  In addition, Plaintiff

is unclear as to what could possibly serve as the basis for redactions of the information underlying these claims, as OFAC has publicly described these claims on successive occasions. *See Canning v. U.S. Dep't of Justice*, 567 F. Supp. 2d 85, 93-94 (D.D.C. 2008) (ruling that a federal bureau cannot redact but must disclose information that is already in the public domain).

Defendants contend that OFAC's non-privileged and unclassified summary of otherwise privileged information removes "any doubt as to the adequacy of the notice provided to Joumaa…" Defs. Mot. at 27 (Dkt. 10).  According to Defendants, OFAC "provided additional detail as to the locations, methods, and amounts of Joumaa's illicit activities." *Id*.  To the extent that Defendants are referring to details regarding OFAC's initial 2011 designation of Plaintiff, those details are irrelevant to its determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act, as they are historical in nature (some over a decade old) and immaterial to OFAC's 2018 denial.

On the other hand, if Defendants are making reference to the non-privileged and unclassified summary underlying OFAC's 2018 denial, then those details cannot possibly suffice to meet the agency's due process obligation to provide Plaintiff with adequate notice as to the basis for its denial decision.  First, excluding one (1) out of eleven (11) sentences contained in the non-privileged and unclassified summary, none of the allegations relate to narcotics trafficking as defined by the Kingpin Act.  Thus, ten (10) out of eleven (11) sentences of that summary fail to provide Plaintiff with adequate notice as to the basis of his continued designation, as there is no connection between the described activity and the designation criteria of § 1904(b)(4).  The sole sentence in OFAC's summary that makes reference to narcotic drugs states that "[a]s of 2014, Ayman JOUMAA is associated with a designated SDNT individual in the pick up of bulk drug proceeds in Europe to launder to Colombia." A.R. 1617.  OFAC seeks to create the impression

that Plaintiff is personally engaged in "the pick up of bulk drug proceeds in Europe," but that sentence can be read in various ways, including ways that would exclude Plaintiff's relationship to narcotics trafficking.  Under Defendants' theory, Plaintiff has no recourse to clarify this specific allegation and is thus unable to provide a sufficient rebuttal to it, absent a blanket denial to an agency that has proven that it will treat any such denial as non-credible.[11]

Defendants allege that OFAC had provided "all relevant, non-privileged, and unclassified information," as well as a "non-privileged and unclassified summary of otherwise privileged information" contained in the administrative record during the reconsideration process. Defs. Mot. at 11 (Dkt. 10).  This is misleading. The fact is that OFAC provided a redacted administrative record—the redacted portions of which included *the entire section* identifying the "basis for designation." A.R. at 0026-0044.  OFAC's non-privileged and unclassified summary of otherwise privileged information contained in the administrative record was all of four (4) sentences in length, detailing the same conclusory allegations that had been given more extended treatment in OFAC's own press release announcing Plaintiff's designation. While the evidentiary basis underlying Plaintiff's 2011 designation is further addressed in OFAC's updated non-privileged and unclassified summary, it is unavailing insofar as the factual allegations recorded therein are historical and cannot permissibly serve as a basis for Plaintiff's continued designation under the Kingpin Act.

---

[11] Even assuming *arguendo* that OFAC's allegation was true—a fact not conceded by Plaintiff— OFAC has failed to identify fundamental aspects of the alleged conduct, such as the nature of the association with the SDNT; whether Plaintiff knew the party was designated; whether he knew the funds in question were related to narcotics trafficking; or whether such activity was illicit—i.e., whether the conduct was illegal or improper.

Defendants' withholding of the evidentiary bases for its allegations regarding Plaintiff's conduct is seriously detrimental to Plaintiff's opportunity to provide a meaningful response, particularly insofar as the evidence withheld is used to reject Plaintiff's reconsideration petition. For instance, OFAC's initial press release announcing Plaintiff's designation identified three money exchange houses through which Plaintiff was alleged to have laundered funds in support of narcotics trafficking.  Plaintiff's reaction was to sever all ties with one exchange house (Hassan Ayash Exchange Company); shut down the exchange house operating under his control (New Line Exchange Trust Co.); and deny that he ever had a relationship with the remaining exchange house (Ellissa Exchange Company).[12]  As Defendants acknowledge, OFAC "accepted, for purposes of deciding Joumaa's request, that the operations of or Joumaa's relationship to [two of the three exchange houses – Hassan Ayash Exchange Company and New Line Exchange Trust Co.] ceased after his designation."  Defs. Mot. at 18 (Dkt. 10).  Nevertheless, OFAC found such actions on Plaintiff's part to be insufficient because Joumaa "did not even attempt to submit documents to rebut all the allegations concerning . . . other aspects of Joumaa's vast drug trafficking and money laundering network, including those outside of Lebanon and those not involving business entities."  Id. at 19.  Plaintiff, however, was provided no notice as to these "other aspects of [his] vast drug trafficking and money laundering network," and the agency's expectation that he could respond to

---

[12] Regarding Plaintiff's alleged relationship with Ellissa Exchange Company, Defendants state that Plaintiff "did not even attempt to submit documents to rebut all the allegations concerning Ellissa Exchange Company . . . ." Defs. Mot. at 18 (Dkt. 10).  Defendants attempt to imply that Plaintiff's alleged refusal to do so shows that their allegations regarding his relationship with Ellissa Exchange Company are true.  However, the precise opposite is the case: Plaintiff denied having any relationship, business or otherwise, with Ellissa Exchange Company, as evidenced in Plaintiff's response to OFAC's questionnaire, and thus has no documents to submit to OFAC to rebut the agency's allegations. A.R. 0118.  OFAC did not object to the credibility of this representation in its evidentiary memorandum.

such allegations—absent any notice of them—provides a Kafkaesque undertone to the agency's reconsideration proceedings.

Finally, OFAC fails to identify how the information provided in its unclassified summary corresponds to the redacted portions of the administrative record.  Defendants argue that OFAC has "no [] obligation to do so"; that "the non-privileged and unclassified summary represents the extent of information releasable at this time"; and that "any cross-references to the corresponding classified or privileged material would simply lead Joumaa to a redacted page . . . and would not provide any additional information regarding the basis of Joumaa's designation." Defs. Mot. at 30 (Dkt. 10).  These arguments are unavailing.  The obligation is clear: OFAC must provide adequate notice as to the basis of Plaintiff's designation and provide him a meaningful opportunity to respond to the allegations underlying his designation.  By failing to identify how the information contained within the unprivileged and unclassified summary relates to the redacted portions of the evidentiary memorandum—particular the redacted portions contained in the various subsections of Section IV of OFAC's evidentiary memorandum—Plaintiff is unable to understand the manner in which OFAC is utilizing this information to support its findings or its ultimate conclusion.  Thus, Plaintiff in impaired in his ability to properly challenge OFAC's findings or conclusion.  This is all the more critical where, as here, Plaintiff is alleging that OFAC has used factors not contemplated by Congress in supporting its finding that Plaintiff meets the criteria for designation.[13]

---

[13] To the extent that the Court finds the redacted portions of the administrative record to adequately support OFAC's conclusion that Plaintiff continues to meet the criteria for designation under the Kingpin Act, Plaintiff urges the Court to take note of the fact that he has not been provided notice as to such evidence and, as such, the Court is respectfully requested to direct OFAC to provide sufficient notice to give Plaintiff a meaningful opportunity to respond to that evidence.  Failing

As a result, Plaintiff has stated a claim for which relief can be granted, and accordingly, Defendants' Motion to Dismiss as to Count IV of the Amended Complaint should be denied. Further, Plaintiff should be granted summary judgment as to Count IV of the Amended Complaint.

**B.      Defendants Violated the APA By Failing to Adequately Set Forth Their Reasons for Their Denial of Plaintiff's Reconsideration Request and Their Determination that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act**

"A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for a decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (quoting *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980). "This requirement is codified in the APA, [5 U.S.C. § 555(e),] which requires an agency to provide 'a brief statement of the grounds for denial' whenever the agency 'den[ies] in whole or in part . . . a written application, petition, or other request of an interested person made in connection with an agency proceeding,' unless the agency is affirming a prior denial or . . . the denial is self-explanatory." *Lind v. McHugh*, Civil Action No. 10-22107 (RBW), 16 (D.D.C. Aug. 7, 2014). Such requirement "not only ensures the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review." *Id*.

Defendants have failed to evidence their "careful consideration" of Plaintiff's evidentiary submissions during the reconsideration matter and have left Plaintiff unable to "apprise the agency of [] errors it [has] made . . ." *Id*. OFAC failed to provide adequate notice as to the basis underlying

---

this, Plaintiff will be unable to meaningfully respond to OFAC's factual allegations—to the detriment of his interests as well as the ultimate objectives of the agency.

its determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act. Absent such notice, Plaintiff is unable to submit any evidence to OFAC that may counter that within the agency's possession or otherwise take steps that negates the agency's determination that he continues to meet the criteria for designation pursuant to § 1904(b)(4).   For this reason, Defendants have violated the APA by failing to provide adequate notice as to the basis for its denial of Plaintiff's reconsideration petition and its determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act.   Accordingly, summary judgment as to Count IV of the Amended Complaint should be granted in favor of the Plaintiff, and the Defendant's Motion for Summary Judgment as to Count IV should be denied.

## CONCLUSION

For the foregoing reasons, respectfully request this Honorable Court to grant Plaintiff's Cross-Motion for Summary Judgment and enter judgment in favor of Plaintiff on all claims, while denying Defendants' motion to dismiss or, in the alternative, for summary judgment as to all claims.


Dated May 4, 2018

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*
*Ayman Saied Joumaa*