**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AYMAN SAIED JOUMAA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STEVEN MNUCHIN, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 17-2780 (TJK) |

**<u>DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................................. 1

DISCUSSION .................................................................................................................... 2

I.     Joumaa Has Failed To Establish That OFAC's Decision Denying His Delisting
Request Is Arbitrary And Capricious Or In Excess Of Its Statutory Authority ................. 2

     A.     OFAC Properly Considered The Credibility Of Evidence Before The
Agency ................................................................................................................ 2

     B.     Substantial Evidence Supports OFAC's Conclusion That Joumaa's Illicit
Activities Are Ongoing ........................................................................................ 7

     C.     Substantial Evidence Supports OFAC's Finding That Joumaa Plays A
Significant Role In International Narcotics Trafficking ...................................... 11

II.     The Notice Provided By OFAC Accords With The Requirements Of The Fifth
Amendment And The APA ............................................................................................. 15

     A.     Joumaa Does Not Have Standing To Assert Constitutional Rights ..................... 15

     B.     Joumaa's Fifth Amendment Due Process Argument Fails On The Merits ......... 16

     C.     OFAC Has Adequately Explained The Reasons For Its Decision ....................... 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012) ............................................................................. 20

*Al-Aqeel v. Paulson*,
   568 F. Supp. 2d 64 (D.D.C. 2008) ..................................................................... 21

*Bean Dredging, LLC v. United States*,
   773 F. Supp. 2d 63 (D.D.C. 2011) .................................................................. 5, 6

*Butte Cty. v. Hogen*,
   613 F.3d 190 (D.C. Cir. 2010) ........................................................................... 24

*Canning v. U.S. Dep't of Justice*,
   567 F. Supp. 2d 85 (D.D.C. 2008) ..................................................................... 20

*D.C. Transit Sys., Inc. v. Wash. Metro. Area Transit Comm'n*,
   466 F.2d 394 (D.C. Cir. 1972) ............................................................................. 5

*D.C. v. Barrie*,
   741 F. Supp. 2d 250 (D.D.C. 2010) ................................................................... 23

*Empresa Cubana Exportadora v. U.S. Dep't of the Treasury*,
   516 F. Supp. 2d 43 (D.D.C. 2007) ..................................................................... 11

*Fares v. Smith*,
   249 F. Supp. 3d 115 (D.D.C. 2017) .............................................................. 19, 23

*FBME Bank Ltd. v. Lew*,
   125 F. Supp. 3d 109 (D.D.C. 2015) .............................................................. 19, 20

*Fla. Gas Transmission Co. v. FERC*,
   604 F.3d 636 (D.C. Cir. 2010) ........................................................................... 13

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010).......................................................................................... 2, 12

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   219 F. Supp. 2d 57 (D.D.C. 2002), *aff'd* 333 F.3d 156 (D.C. Cir. 2003) ................................... 2

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003)................................................................. 2, 6, 7, 10

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ................................................................... 15, 21

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ..................................................................... *passim*

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ............................................................................................... 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................................. 25

*Nat'l Shooting Sports Found., Inc. v. Jones*,
  716 F.3d 200 (D.C. Cir. 2013) .............................................................................. 25

*New Vision Photography Program, Inc. v. D.C.*,
  54 F. Supp. 3d 12 (D.D.C. 2014) .................................................................... 15, 16

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999) ............................................................................ 6, 12

*Prisology v. Fed. Bureau of Prisons*,
  74 F. Supp. 3d 88 (D.D.C. 2014), *aff'd* 852 F.3d 1114 (D.C. Cir. 2017) ................................. 16

*Quality Auto. Servs., LLC v. Pension Ben. Guar. Corp.*,
  960 F. Supp. 2d 211 (D.D.C. 2013) ...................................................................... 24

*Remmie v. Mabus*,
  898 F. Supp. 2d 108 (D.D.C. 2012) ...................................................................... 24

*Roelofs v. Sec'y of Air Force*,
  628 F.2d 594 (D.C. Cir. 1980) .............................................................................. 24

*Rojas-Vega v. U.S. Immigration & Customs Enf't*,
  No. 16-2291 (ABJ), 2018 WL 1472494 (D.D.C. Mar. 26, 2018) ........................... 16

*Sasol N. Am. Inc. v. Nat'l Labor Relations Bd.*,
  275 F.3d 1106 (D.C. Cir. 2002) .............................................................................. 5

*Siegel v. Secs. & Exch. Comm'n*,
  592 F.3d 147 (D.C. Cir. 2010) ................................................................................ 7

*Tourus Records, Inc. v. DEA*,
  259 F.3d 731 (D.C. Cir. 2001) .............................................................................. 24

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ................................................................................................. 7

*Winston & Strawn, LLP v. McLean*,
    843 F.3d 503 (D.C. Cir. 2016) ............................................................................................ 16

*\*Zevallos v. Obama*,
    10 F. Supp. 3d 111 (D.D.C. 2014), *aff'd* 793 F.3d 106 (D.C. Cir. 2015) ......................... *passim*

*\*Zevallos v. Obama*,
    793 F.3d 106 (D.C. Cir. 2015) ....................................................................................... *passim*

## STATUTES

5 U.S.C. § 555 ................................................................................................... 2, 23, 24, 25

5 U.S.C. § 706 ...................................................................................................... 11, 23, 25

21 U.S.C. § 1903 .......................................................................................................... 12

21 U.S.C. § 1904 ....................................................................................................... 5, 12

21 U.S.C. § 1907 ................................................................................................. 3, 12, 13

## REGULATIONS

31 C.F.R. § 501.807 ...................................................................................................... 9, 17

31 C.F.R. § 598.314 ........................................................................................................ 14

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 16, 25

Fed. R. Civ. P. 56 .......................................................................................................... 25

## UNITED STATES CONSTITUTION

U.S. CONST. amend. V ............................................................................................... *passim*

## INTRODUCTION

Defendants' motion to dismiss or, in the alternative, for summary judgment established that the Office of Foreign Assets Control ("OFAC") reasonably concluded, based on the information available to the agency, that Plaintiff Ayman Saied Joumaa ("Joumaa") plays a significant role in international narcotics trafficking pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), and that therefore his request to be removed from the Specially Designated Nationals and Blocked Persons ("SDN") List should be denied.  *See* ECF No. 10-1 ("Defs.' Mem.") at 14-23.  It also explained that OFAC's disclosures to Joumaa more than adequately apprise him of the basis of OFAC's decision.  *See id.* at 23-31.  Neither the Fifth Amendment—which Joumaa has no standing to invoke—nor the Administrative Procedure Act ("APA") requires more.

The arguments advanced by Joumaa in his consolidated opposition and cross-motion for summary judgment, ECF Nos. 11, 12 (collectively "Pl.'s Mem."), do not establish otherwise. Although Joumaa claims that OFAC improperly relied on credibility determinations and other evidence insufficient to demonstrate that Joumaa currently meets the criteria for designation under the Kingpin Act, his argument depends on misapprehensions and mischaracterizations of OFAC's decision, as well as a misunderstanding of the APA's requirements.  Notwithstanding the classified and law enforcement sensitive information that further supports OFAC's decision, the unclassified and non-privileged record alone establishes a rational basis for the agency's determination that Joumaa continues to warrant designation as a Specially Designated Narcotics Trafficker ("SDNT").  And while Joumaa continues to press his challenge under the Fifth Amendment, he has conceded that he lacks standing to bring such a claim, which, in any event, fails on the merits given the extent of information released to him, including multiple non-

1

privileged and unclassified summaries of otherwise privileged information.  Similarly, Joumaa's

new claim under 5 U.S.C. § 555(e) is neither properly before the Court nor persuasive.

Defendants' motion to dismiss or for summary judgment should therefore be granted, and

Joumaa's cross-motion for summary judgment should be denied.

**DISCUSSION**

**I.      Joumaa Has Failed To Establish That OFAC's Decision Denying His Delisting
         Request Is Arbitrary And Capricious Or In Excess Of Its Statutory Authority**

Joumaa claims that the Court should set aside OFAC's denial decision because that

decision fails to comport with the APA's requirements.  Pl.'s Mem. at 16-28.[1]  Specifically, he

argues that OFAC improperly based its decision on credibility determinations, as well as

information that is not current or that lacks a sufficient nexus to narcotics trafficking.  *See id.*

These arguments are without merit.

**A.      OFAC Properly Considered The Credibility Of Evidence Before The Agency**

First, Joumaa challenges OFAC's ability to rely on credibility determinations in reaching

a decision regarding his delisting request.  *See id.* at 15-17, 19-21, 23, 27.  As an initial matter,

however, Joumaa mischaracterizes OFAC's decision in suggesting that the agency "denied

Plaintiff's reconsideration request and determined that Plaintiff continues to meet the criteria for

designation under the Kingpin Act on the basis of a credibility determination regarding

Plaintiff's representations during the reconsideration matter."  *Id.* at 15.  OFAC expressly based

---

[1] Joumaa acknowledges that, pursuant to the APA, a court must uphold an agency's decision so
long as it is supported by a rational basis.  Pl.'s Mem. at 14-15.  He nevertheless asserts that, in
considering an APA claim, "[a] court's review should be no different in cases involving U.S.
national security or foreign policy."  *Id.* at 15.  Joumaa is incorrect.  The Supreme Court and
courts within the D.C. Circuit have consistently held that cases involving national security and
foreign policy warrant heightened deference to an agency's decision.  *E.g.*, *Holder v.
Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010); *Holy Land Found. for Relief & Dev. v.
Ashcroft*, 219 F. Supp. 2d 57, 84 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

its denial decision on its determination that Joumaa continues to meet the criteria for designation

under the Kingpin Act, not simply that he lacks credibility:

> According to information available to OFAC, JOUMAA continues to meet the criteria for designation as an SDNT pursuant to the Kingpin Act. Information available to OFAC indicates that JOUMAA continues to play a significant role in international narcotics trafficking. Therefore, JOUMAA's reconsideration request and removal from the SDN List should be denied.

A.R. at 17; *see also id.* at 1612 (explaining that OFAC reached its decision "[a]fter reviewing all

of the evidence before OFAC, including the information that [Joumaa] provided, and law

enforcement sensitive, classified, and open source information").

The specific sections of OFAC's evidentiary memorandum highlighted by Joumaa are

not to the contrary. *See* Pl.'s Mem. at 19, 23. In Section IV of that memorandum, OFAC

considered "the information available to OFAC"—including "JOUMAA's responses to the

questionnaire provided by OFAC, as well as the additional documents, arguments, and evidence

he provided"—and determined that "JOUMAA's arguments fail to demonstrate a basis for

removal from the SDN List." A.R. at 4. Subsection 2 of Section IV includes information

establishing that "JOUMAA continues to be involved in money laundering activities, and his

claims to the contrary are not credible." *Id.* at 7. Given the information pertaining to Joumaa's

money laundering activities, Joumaa has no basis to assert that "Subsection 2 is directed at

attacking Plaintiff's credibility" and "does not show (and does not even purport to show) that

Plaintiff 'continues to be involved in money laundering activities' in support of narcotics

trafficking." Pl.'s Mem. at 23 (quoting A.R. at 7); *see also* 21 U.S.C. § 1907(3) (defining

"narcotics trafficking" in part as "any illicit activity to . . . finance. . . narcotic drugs, controlled

substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet,

conspire, or collude with others to do so").[2]

Joumaa fares no better in attempting to characterize Section IV.3 of the evidentiary

memorandum as improperly "reliant on . . . credibility determinations."  *See* Pl.'s Mem. at 19.

That subsection concerns Joumaa's relationships with previously designated SDNs, including

Pedro Claver Mejia Salazar, who "laundered narcotics proceeds on behalf of La Oficina de

Envigado."  A.R. at 9-12.  In the administrative reconsideration process, Joumaa represented to

OFAC that he had a business relationship with Salazar but "did not admit that he engaged in any

illicit activities such as money laundering with or on behalf of [Salazar]."  *Id.* at 9; *see also id.* at

113, 1613.  But OFAC obtained other evidence that Salazar "worked with JOUMAA as part of

his global drug money laundering operations."  *Id.* at 10; *see also id.* at 1537-41 (describing

Salazar's illicit activities, and explaining that "Salazar and his network work closely with

Lebanese-Colombian drug money launderer Ayman Saied Joumaa" and "[o]peratives of La

Oficina de Envigado have tapped into Ayman Joumaa's international networks and successfully

moved drug proceeds back to traffickers in Colombia from locations around the world"), *id.* at

1617 ("Ayman JOUMAA is a contact for Black Market Peso Exchange (BMPE) broker Pedro

Clavel Mejia-Salazar in laundering drug proceeds.").  This evidence therefore both supports the

agency's finding that Joumaa engaged in narcotics trafficking and casts doubt on the credibility

of Joumaa's self-serving representations, further bolstering OFAC's conclusion that Joumaa's

delisting request should be denied.  *See id.* at 9-10.

---

[2] Because most of the evidence in Section IV.2 is redacted as either classified or law
enforcement sensitive information, *see* A.R. at 7-9, Joumaa's assertion about what Subsection 2
"show[s]" or "even purport[s] to show," Pl.'s Mem. at 23, is necessarily speculative.

Moreover, Joumaa's broader suggestion that OFAC cannot make credibility determinations in evaluating a delisting request finds no basis in law or logic.  According to Joumaa, "credibility (or alleged lack thereof) is not [] a factor that Congress intended Defendants to consider in designating a party under 21 U.S.C. § 1904(b)(4)."  Pl.'s Mem. at 15.  He notably offers no legal support for this proposition, *see id.*, perhaps because it has long been established not only that agencies may make credibility determinations when weighing evidence before them, but also that courts must accord particular deference to those determinations, *see D.C. Transit Sys., Inc. v. Wash. Metro. Area Transit Comm'n*, 466 F.2d 394, 414 (D.C. Cir. 1972) ("Credibility determinations within the agency's sphere of expertise are peculiarly within its province, and courts will upset them only if made irrationally."); *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 81 (D.D.C. 2011) ("[A]bsent clear error, 'an agency's credibility decision normally enjoys almost overwhelming deference.'" (quoting *Sasol N. Am. Inc. v. Nat'l Labor Relations Bd.*, 275 F.3d 1106, 1112 (D.C. Cir. 2002))).

Credibility determinations made by OFAC in the context of administering the sanctions program are no exception.  Thus in *Zevallos v. Obama*, the district court and D.C. Circuit declined to find OFAC's denial decision arbitrary and capricious where the agency made credibility determinations with which the SDNT disagreed.  10 F. Supp. 3d 111, 123 n.9 (D.D.C. 2014) ("Mr. Zevallos made these arguments to OFAC, and OFAC concluded that the evidence before it was credible, as it explained in its 2013 Evidentiary Memorandum.  It is not the province of this Court to reweigh the evidence and reconsider Mr. Zevallos's arguments on appeal."  (citations omitted)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015).  Similarly, in *Kadi v. Geithner*, the court held that OFAC's designation was supported by substantial evidence, notwithstanding the plaintiff's argument that "the evidence underlying OFAC's decision is

5

unreliable." 42 F. Supp. 3d 1, 12-23 (D.D.C. 2012) (emphasizing the "highly deferential review accorded to OFAC's decision"). These cases, along with others involving designation determinations, confirm that an agency may consider "a broad range of evidence" and make credibility determinations regarding that evidence, and that a court should uphold an agency's decision provided it is supported by substantial evidence. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (rejecting challenge to OFAC's use of hearsay evidence); *see also Zevallos*, 10 F. Supp. 3d at 123 n.9; *Kadi*, 42 F. Supp. 3d at 13-23. *Cf. People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 19 (D.C. Cir. 1999) ("Because nothing in the legislation restricts the Secretary from acting on the basis of third hand accounts, press stories, material on the Internet or other hearsay regarding the organization's activities, the 'administrative record' may consist of little else."). While Joumaa may have his own views regarding the evidence before the agency,[3] his disagreement is insufficient to cast doubt on the reasonableness of OFAC's decision. *See Zevallos*, 10 F. Supp. 3d at 123 n.9; *see also Bean Dredging*, 773 F. Supp. 2d at 81 ("[T]he inquiry here is a limited one; it is not the reviewing court's role to evaluate credibility. Even if the reviewing court could have made a different choice had the matter been before it *de novo,* it 'may not substitute its own judgment for

---

[3] Joumaa takes particular exception to OFAC's treatment of his representation that he had no relationship with the Ellissa Exchange Company. *See* Pl.'s Mem. at 35 n.12 (citing A.R. at 118). But OFAC found that Joumaa and his criminal network used the Ellissa Exchange Company to launder illicit proceeds. A.R. at 67. The non-privileged and unclassified summary of otherwise privileged information produced to Joumaa on March 9, 2018 elaborates on the evidence considered by OFAC: "Ayman JOUMAA directed bulk currency pickups and trade based money laundering via HASSAN AYASH EXCHANGE COMPANY and ELLISSA EXCHANGE COMPANY. JOUMAA used these entities to transfer funds derived from the proceeds of drug trafficking to the United States through various used car dealerships. Vehicles are subsequently purchased and shipped to the Middle East. The proceeds from these activities are later reinvested in criminal activities." *Id.* at 1617. In light of this evidence, OFAC reasonably found Joumaa's statements regarding his lack of a relationship with the Ellissa Exchange Company to be unreliable and insufficient to warrant delisting. *Id.* at 15-16.

the agency's choice between two fairly conflicting views.'" (quoting *Siegel v. Secs. & Exch. Comm'n,* 592 F.3d 147, 155 (D.C. Cir. 2010))).

### B.   Substantial Evidence Supports OFAC's Conclusion That Joumaa's Illicit Activities Are Ongoing

Second, Joumaa contends that OFAC's denial decision is inconsistent with the APA's requirements because it relies on outdated information.  Pl.'s Mem. at 16, 18, 20-21, 25-26. According to Joumaa, "Defendants do not show that Plaintiff's activities are current and/or ongoing, and thus fail to support their finding that he continues to meet the criteria for designation under the Kingpin Act." *Id.* at 16; *see also id.* at 21 ("The evidence put forth by the agency is . . . historical in nature[.]").  Joumaa's challenge regarding the date of the information considered by OFAC fails on multiple grounds.

As an initial matter, Joumaa misstates the burden on OFAC imposed by the Kingpin Act and the APA.  While there is no dispute that the Kingpin Act provides for the blocking of assets of "any foreign person that the Secretary of the Treasury . . . designates as playing a significant role in international narcotics trafficking," 21 U.S.C. § 1904(b)(4), neither that statute nor the APA requires OFAC to produce irrefutable evidence that Joumaa was engaging in narcotics trafficking on or even near the date the agency reached its denial decision.  *Cf. Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 554 (1978) ("Administrative consideration of evidence . . . always creates a gap between the time the record is closed and the time the administrative decision is promulgated [and, we might add, the time the decision is judicially reviewed]." (alteration in original)).  Rather, OFAC must demonstrate only that there is reason to believe that Joumaa's illicit activities had not ceased as of the date of the agency's denial decision.  *See Holy Land Found. for Relief & Dev.*, 333 F.3d at 162 (upholding district court's finding of substantial evidence for designation where "[t]here was no plausible evidence

7

presented which showed that these ties [between the plaintiff and a terrorist organization] had been severed"); *Zevallos*, 793 F.3d at 113-14 (holding OFAC's denial of delisting request was not arbitrary and capricious, where the agency "conclude[d] that Zevallos remains of concern to law enforcement").

*Zevallos*, on which Joumaa primarily relies, Pl.'s Mem. at 28, is illustrative of this point. There, the SDNT claimed, *inter alia*, that OFAC's denial of his delisting request was arbitrary and capricious "because he is incarcerated in Peru . . . and therefore, by definition, cannot *currently* drug traffic, as required by the Kingpin Act."  10 F. Supp. 3d at 121 (emphasis in original).  Supporting OFAC's 2013 denial decision were only "(1) 2007 U.S. criminal charges brought against Mr. Zevallos for violations of the Kingpin Act; (2) the freezing of Panamanian bank accounts in Mr. Zevallos's name; (3) 2011 and 2012 Peruvian court activity; (4) newspaper articles demonstrating Mr. Zevallos's continued control of his assets despite his current incarceration; and (5) newspaper articles indicating that Mr. Zevallos was recently found with a cell phone in his prison cell."  *Id.*[4]  Thus, OFAC did not base its denial decision on any direct evidence that Zevallos himself was engaging in narcotics trafficking on the very date it reached its decision.  *See id.*  The court, noting the "extremely deferential" review applicable "in an area at the intersection of national security, foreign policy, and administrative law," nevertheless found that "OFAC relied on substantial evidence in reaching its determination that delisting Mr. Zevallos as an [SDNT] was inappropriate."  *Id.* at 121-22 (citations omitted).  In so concluding, the court emphasized not the date of the information but rather that "the post-designation record

---

[4] The D.C. Circuit noted that, according to newspaper articles relied on by OFAC, Zevallos also had a memory stick in prison.  793 F.3d at 112.

as a whole . . . 'adequately supports the ultimate decision.'" *Id.* at 122-23 (citation omitted). The D.C. Circuit affirmed. *Zevallos*, 793 F.3d at 113-14.

In light of *Zevallos*, Joumaa cannot persuasively argue that the date of information considered by OFAC demonstrates that the agency's decision was unsupported by substantial evidence. First, the evidence relied on by OFAC is by no means outdated. For example, the agency found that "[a]s of July 2011, a Colombian individual was laundering drug proceeds for Ayman JOUMAA"; "[a]s of March 2013, a Colombian money launderer, later designated as an SDNT by OFAC, uses Ayman JOUMAA to launder money in Europe"; "[a]s of 2014, Ayman JOUMAA is associated with a designated SDNT individual in the pick up of bulk drug proceeds in Europe to launder to Colombia"; "[a]s of 2016, Ayman JOUMAA oversees money laundering operations between Lebanon, Colombia, and Venezuela"; "[a]s of June 2016, Ayman JOUMAA is noted to currently be the leader of a group of money launderers"; and "[a]s of November 2016, Ayman JOUMAA utilized a shipping company associated with a previously OFAC designated individual to move money," and "JOUMAA [] shipped arms and currency in containers through Europe." A.R. at 1617. Moreover, and as explained in detail in Defendants' motion, OFAC also considered the documents and arguments submitted by Joumaa but found those submissions insufficient to warrant delisting. *See* Defs.' Mem. at 17-19; 31 C.F.R. § 501.807 (placing the burden on the SDNT to establish that removal from the SDN List is warranted).[5] The agency therefore had a rational basis to conclude that Joumaa's illicit activities had not ceased and thus that his delisting request should be denied.

---

[5] Joumaa mischaracterizes OFAC's decision in suggesting that the agency treated all his denials as lacking credibility. Pl.'s Mem. at 34. For example, OFAC expressly accepted, for purposes of deciding his delisting request, Joumaa's claims "that the operations of, or his relationship to, [three] SDN entities . . . ceased after his designation." A.R. at 1613; *see also id.* at 15.

Nor can Joumaa advance his argument by challenging OFAC's reference to information predating his initial designation in 2011. *See* Pl.'s Mem. at 33 ("To the extent that Defendants are referring to details regarding OFAC's initial 2011 designation of Plaintiff, those details are irrelevant to its determination that Plaintiff continues to meet the criteria for designation under the Kingpin Act, as they are historical in nature (some over a decade old) and immaterial to OFAC's 2018 denial."); *see also id.* at 18, 20.  First, as Joumaa's delisting request challenged the basis of his 2011 designation, *see* A.R. at 87; *see also id.* at 131, 139, Joumaa cannot object to OFAC's providing him an explanation of that initial decision, *id.* at 4-7.  Additionally, OFAC may take into account Joumaa's past narcotics trafficking and money laundering activities when reaching a decision about whether Joumaa continues to play a significant role in international narcotics trafficking, as such information is at the very least probative of Joumaa's networks and capabilities. *See Holy Land Found. for Relief & Dev.*, 333 F.3d at 162 ("HLF also argues that Treasury was arbitrary and capricious in relying on information that predated the 1995 designation of Hamas as a terrorist organization.  However, as the district court noted, it was clearly rational for Treasury to consider HLF's genesis and history, which closely connect it with Hamas."  (citation omitted)); *Zevallos*, 10 F. Supp. 3d at 122 (holding OFAC's denial decision was supported by a rational basis where it included evidence of SDNT's "own prior drug trafficking"), *aff'd*, 93 F.3d at 113-14 (explaining that OFAC may rely on evidence that "shows that Zevallos had the capacity to communicate with others," or that "show[s] that Zevallos remains in contact with his family and continues to manage his assets").[6]  Such historical information also informs and provides context as to how OFAC assesses the responses Joumaa

---

[6] This precedent likewise forecloses Joumaa's argument—unsupported by any citations to legal authority—that OFAC cannot rely on "historical relationships with certain 'previously designated individuals.'"  Pl.'s Mem. at 19 (quoting A.R. at 9).

submitted to its questionnaire, as well as the information he submitted on his own, and is appropriate for the agency to consider.

Further, *Empresa Cubana Exportadora v. U.S. Department of the Treasury*, on which Joumaa also relies, is inapposite. *See* Pl.'s Mem. at 15, 21 (citing 516 F. Supp. 2d 43, 53 (D.D.C. 2007)). In that case, the court granted summary judgment to OFAC on two APA claims and denied summary judgment to both parties on a third APA claim, remanding to the agency to more fully explain its decision that renewal of a trademark would be prohibited unless specifically licensed. *Empresa Cubana Exportadora*, 516 F. Supp. 2d at 54-59. While the court noted that it must review whether OFAC considered the relevant factors in reaching its decision, *id.* at 53-54, the case did not involve an interpretation of the Kingpin Act, let alone a question of what type of evidence OFAC can rely on in making a designation pursuant to that statute, *see id.* at 47-52 (explaining that OFAC's decision was based on authority in the Trading With the Enemy Act and the Cuban Asset Control Regulations).

### C. Substantial Evidence Supports OFAC's Finding That Joumaa Plays A Significant Role In International Narcotics Trafficking

Joumaa also argues that OFAC's decision denying his delisting request is arbitrary and capricious because it is based on Joumaa's money laundering activities that lack a sufficient nexus to narcotics trafficking. Pl.'s Mem. at 18, 21-22; *see also id.* at 25-26 (raising similar argument in context of § 706(2)(C) claim). Underlying this theory is the premise that each piece of evidence relied on by the agency must expressly relate to narcotics trafficking. *See id.* at 22 (noting that certain findings in the non-privileged and unclassified summary of otherwise privileged information "have no purported connection to narcotics trafficking," which according to Joumaa is "required by the Kingpin Act"). This argument is without merit, as neither the Kingpin Act nor the APA requires what Joumaa demands of OFAC.

While the Kingpin Act permits the Secretary of the Treasury to designate foreign persons "as playing a significant role in international narcotics trafficking," 21 U.S.C. § 1904(b)(4), it also broadly defines "narcotics trafficking," *see id.* § 1907(3), and places no limits whatsoever on the types of evidence OFAC may rely on when making designation determinations, *see id.* § 1903(i) (providing that OFAC may base its decision on classified information). *See also People's Mojahedin Org. of Iran*, 182 F.3d at 19 (D.C. Cir. 1999), quoted in *Zevallos*, 793 F.3d at 113 (emphasizing that authorizing statute does not restrict the materials agency may consider in making designation decisions). Moreover, APA review of OFAC's decision does not require the Court to evaluate whether each discrete piece of evidence, in isolation, relates to narcotics trafficking, but rather whether "[a]ll this evidence together provides adequate basis to justify [OFAC's] determination." *Zevallos*, 793 F.3d at 114. Indeed, the national security and foreign policy implications of OFAC's Kingpin Act designations only confirm the need to avoid the piecemeal review favored by Joumaa. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) ("[N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess. . . . In this context, conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government.").

*Zevallos* is instructive on this point as well. There, the evidence on which OFAC relied in concluding that Zevallos plays a significant role in international narcotics trafficking consisted of newspaper reports (including reports that he had a cell phone in prison), foreign court activity, asset information, and a six-year-old indictment. *See* 10 F. Supp. 3d at 121-22. Rejecting Zevallos's argument that OFAC's denial decision was arbitrary and capricious because he was

incarcerated, and therefore could not engage in drug trafficking, the court found that substantial

evidence supported OFAC's conclusion. *Id.* at 121-23.  In doing so, the court considered the

Kingpin Act's broad definition of "narcotics trafficking" and the record as a whole, and

concluded that Zevallos's past involvement with narcotics trafficking, coupled with his ongoing

capability of engaging in narcotics trafficking, provided a rational basis for OFAC's decision:

> Notwithstanding his current incarceration, Mr. Zevallos is not off the radar, and is still able to communicate with family members and other potential drug traffickers in order to continue drug trafficking—but equally importantly—to continue managing and laundering his ill-gotten proceeds from his prior drug trafficking.  OFAC thus had substantial evidence—evidence that "adequately supports its ultimate decision," *see Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted)—to conclude that Mr. Zevallos "plays a significant role in international narcotics trafficking," and therefore that delisting him was not appropriate.  21 U.S.C. § 1907(7).

*Id.* at 122-23; *see id.* at 121 ("That two narcotics-trafficking inmates, who had previously worked

together, were found with cell phones supports OFAC's conclusion that delisting Mr. Zevallos

was not appropriate."); *id.* at 122 ("he remains in control of assets and many properties

throughout his network"); *id.* ("That individuals and businesses connected to Mr. Zevallos are

still engaging in narcotics trafficking—despite Mr. Zevallos's incarceration—thus provides a

rational basis from which OFAC concluded that Mr. Zevallos 'plays a significant role in

international narcotics trafficking'" (quoting 21 U.S.C. § 1907(7))); *id.* ("Thus, OFAC relied on

evidence pointing to both Mr. Zevallos's involvement with drug trafficking itself, as well as his

connection to the laundering and management of assets tied to drug trafficking (including his

own prior drug trafficking), both of which formed a rational basis for OFAC's decision.").  The

D.C. Circuit affirmed on the same grounds. *See* 793 F.3d at 113-14 ("[T]his evidence at a

minimum shows that Zevallos had the capacity to communicate with others outside his prison.

And Zevallos does not argue that Treasury could not rely on this evidence in combination with

13

other evidence of illegal activity to conclude that he still represents a threat and should remain designated.").

Here, OFAC considered evidence of Joumaa's own prior drug trafficking and related money laundering, *see* A.R. at 4-7, as well as evidence that, subsequent to his designation, Joumaa has continued to be involved in the laundering of drug proceeds, is associated with other SDNTs, and oversees international money laundering networks, *see id.* at 1617.  The non-privileged and unclassified record of Joumaa's post-designation activities also expressly links Joumaa to narcotics trafficking.  *See id.* at 1617 ("As of July 2011, a Colombian individual was laundering drug proceeds for Ayman JOUMAA."); *id.* ("As of March 2013, a Colombian money launderer, later designated as an SDNT by OFAC, uses Ayman JOUMAA to launder money in Europe."); *id.* ("As of 2013, Ayman JOUMAA facilitates money pick-ups in Europe for a Colombian money launderer, later designated as an SDNT by OFAC."); *id.* ("As of 2014, Ayman JOUMAA is associated with a designated SDNT individual in the pick up of bulk drug proceeds in Europe to launder to Colombia.").[7]  While OFAC considered documents and arguments submitted by Joumaa, it reasonably concluded that those submissions failed to establish that Joumaa's removal from the SDN List is warranted.  *See id.* at 4-16.  The record as a whole thus readily provides a rational basis for OFAC's conclusion that Joumaa continues to play a significant role in international narcotics trafficking.  *See id.* at 1-21, 1612-14, 1617.

---

[7] Joumaa claims that only one finding in the non-privileged and unclassified summary relates to narcotics trafficking.  Pl.'s Mem. at 33.  But Joumaa overlooks the information in the summary linking Joumaa to SDNTs who, by definition, have engaged in activities related to narcotics trafficking.  *See* A.R. at 1617; 31 C.F.R. § 598.314.  And in any event, "[t]he substantial evidence inquiry turns not on how many discrete pieces of evidence the [agency] relies on, but on whether that evidence adequately supports its ultimate decision."  *Zevallos*, 10 F. Supp. 3d at 121 n.8 (citation omitted).

Accordingly, OFAC's denial decision is fully consistent with the requirements of the Kingpin Act and the APA.[8]

For these reasons and those previously set forth by Defendants, the Court should grant summary judgment to Defendants with respect to Counts I, II, and III of Joumaa's Amended Complaint.

## II.   The Notice Provided By OFAC Accords With The Requirements Of The Fifth Amendment And The APA

Joumaa also claims that OFAC's decision to deny his delisting request violated his Fifth Amendment rights and arbitrarily and capriciously deprived him of his property.  Am. Compl. ¶¶ 54-58.  But Joumaa's arguments regarding this claim, frequently unsupported by any citations to binding or persuasive authority, are without merit.  Joumaa makes no effort to explain why he has standing to assert rights under the Fifth Amendment.  *See* Pl.'s Mem. at 30-37.  Moreover, OFAC's disclosures comply with any requirements the Fifth Amendment may impose, and similarly meet the agency's obligations under the APA.

### A.   Joumaa Does Not Have Standing To Assert Constitutional Rights

In their motion to dismiss or, in the alternative, for summary judgment, Defendants explained that Joumaa, as a foreign national without sufficient contacts with the United States, lacks standing to assert rights under the Fifth Amendment.  Defs.' Mem. at 24-25 (citing, *inter alia*, *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004)).  Joumaa does not address Defendants' standing arguments.  *See* Pl.'s Mem. at 29-37.  Accordingly, the Court should treat Defendants' uncontested standing argument as conceded, *see New Vision Photography Program, Inc. v. D.C.*,

---

[8] Defendants respectfully refer the Court to the classified and privileged information in the record, which provides further support for OFAC's decision.

54 F. Supp. 3d 12, 24 (D.D.C. 2014), and dismiss Joumaa's Fifth Amendment claim for lack of

subject-matter jurisdiction, *see Prisology v. Fed. Bureau of Prisons*, 74 F. Supp. 3d 88, 93 (D.D.C.

2014), *aff'd*, 852 F.3d 1114 (D.C. Cir. 2017).[9]

### B.     Joumaa's Fifth Amendment Due Process Argument Fails On The Merits

Even if the Court were to reach the merits of Joumaa's Fifth Amendment claim, it should

reject Joumaa's argument that OFAC's procedures fail to satisfy due process.  According to

Joumaa, "Defendants' non-privileged and unclassified summary—as well as the broader

administrative record to which it is a part—fails to provide adequate notice to Plaintiff as to the

basis for OFAC's determination that he continues to meet the criteria for designation under the

Kingpin Act."  Pl.'s Mem. at 31.  Joumaa's argument elides the actual process he was provided

and ignores relevant caselaw.

First, Joumaa incorrectly suggests that the Court's inquiry should be limited to reviewing

the redacted evidentiary memorandum and the non-privileged and unclassified summary of

otherwise privileged information provided to Joumaa by OFAC.  *See id.* at 32.  Rather, the Court

should also consider OFAC's letter dated March 2, 2018—not addressed by Joumaa in the

context of his Fifth Amendment argument, *see* Pl.'s Mem. at 30-37—which extensively

discussed the reasons for OFAC's conclusion that Joumaa failed to establish an insufficient basis

for the designation or that circumstances have changed such that the designation is no longer

---

[9] The D.C. Circuit has held that "[u]nder the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition."  *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  That case is inapposite, however, because the question of standing is raised in Defendants' motion to dismiss pursuant to Rule 12(b)(1), and because, unlike in *Winston & Strawn*, Joumaa submitted a timely opposition to Defendants' motion.  *See Rojas-Vega v. U.S. Immigration & Customs Enf't*, No. 16-2291 (ABJ), 2018 WL 1472494, at *6 (D.D.C. Mar. 26, 2018).

warranted.  A.R. at 1612-14; *see* 31 C.F.R. § 501.807.[10]  In that letter, OFAC explained that, based on the information available to the agency, it did not find credible Joumaa's claim that he is not currently involved in narcotics trafficking, A.R. at 1612; *see also id.* at 131, 139; that Joumaa's "designation was based on reliable and corroborated information that he led a drug trafficking and money laundering organization moving hundreds of millions of dollars in narcotics proceeds from the United States to Lebanon," *id.* (citing the 2011 indictment against Joumaa and the affidavit in support of Joumaa's arrest and criminal complaint); and that Joumaa's responses regarding his relationship to previously designated SDNTs—including Pedro Mejia Salazar and his sons—lacked credibility, *id.* at 1613; *see also id.* at 113, 399. OFAC's March 2, 2018 letter also addressed the documents submitted by Joumaa, such as documents from the Banking Control Commission of the Central Bank of Lebanon, as well as documents concerning the Lebanon-based entities the Hassan Ayash Exchange Company and the New Line Exchange Trust Co., and the Panama-based entity Goldi Electronics S.A.  *Id.* at 1613. As OFAC explained, Joumaa's documents did not rebut OFAC's evidence regarding these entities, nor did they address other aspects of Joumaa's activities that resulted in his designation. *Id.*; *see also id.* at 118, 401, 403-05, 1283-98.  OFAC similarly considered, and found unpersuasive, the varied arguments raised by Joumaa, including his challenge to the reliability of

---

[10] For the reasons previously set forth by Defendants, the disclosures regarding OFAC's initial designation of Joumaa in 2011 further support a finding that OFAC has complied with any Fifth Amendment requirements.  *See* Defs.' Mem. at 26-27 (describing administrative record, press release, press chart, and non-privileged and unclassified summaries provided to Joumaa); *see also* A.R. at 27, 34, 36, 66-67, 1617.  Although Joumaa claims that these disclosures are "irrelevant" and "immaterial" to the Court's analysis of the notice provided by OFAC related to its 2018 denial decision, *see* Pl.'s Mem. at 33, as discussed above, such prior disclosures provide context and are appropriate to consider; they also further inform Joumaa of the agency's findings of his prior illicit activities, networks, and capabilities, *cf. supra* at 10-11.  Indeed, Joumaa relies on OFAC's 2011 press release in advancing his due process claim.  *See* Pl.'s Mem. at 35.

OFAC's evidence and his claim that his designation was based on a mistake of identity.  *Id.* at 1613; *see also id.* at 139-41.

The evidentiary memorandum and non-privileged and unclassified summary of otherwise privileged information further refute Joumaa's claim that the facts supporting OFAC's decision "remain entirely obscure to him."  Pl.'s Mem. at 32; *see* A.R. at 1-21, 1617.  The evidentiary memorandum rejects Joumaa's contention that he has never been involved in narcotics trafficking, detailing the methods, amounts, and locations of his illicit activities.  A.R. at 4-7.  To the extent possible—OFAC here relied on classified and law enforcement sensitive information—it states that he "continues to be involved in money laundering activities," *id.* at 7-9, and that, contrary to Joumaa's representations to the agency, he engaged in illicit activities such as money laundering on behalf of Pedro Claver Mejia Salazar, *id.* at 9-11, and mischaracterized his relationship with previously designated SDNTs Merhi Ali Abou Merhi, Atef Merhi Abou Merhi, and Hana Merhi Abou Mehri, *id.* at 11-12.  The evidentiary memorandum also extensively describes and responds to the documents and arguments submitted by Joumaa, including his arguments about the reliability of OFAC's evidence and information about certain Lebanese legal proceedings, and explains why those submissions are insufficient to warrant his removal from the SDN List.  *Id.* at 12-16; *see also id.* at 139, 406-07.[11]

Additionally, the non-privileged and unclassified summary does not consist of "conclusory allegations for which rebuttal is impossible."  Pl.'s Mem. at 32.  To the contrary, it

---

[11] Joumaa does not challenge OFAC's determination that these foreign legal proceedings are not probative, *see generally* Pl.'s Mem., nor could he.  *See Kadi*, 42 F. Supp. 3d at 13 ("[T]he Court would, in any event, be reluctant to rely on the decisions of other countries based on information that likely differed from the administrative record compiled by and available to OFAC.  Moreover, these decisions may have been reached under different standards of proof or review, which further undermines any persuasiveness they would have.").

discloses information relied on by OFAC about the methods of Joumaa's activities, including bulk drug proceed pick-ups, the use of a shipping company, and the movement of cars internationally.  A.R. at 1617.  It also specifies that these activities occurred in Europe, Colombia, Venezuela, Africa, and the United States.  *Id.*  Moreover, the summary provides the relevant dates of Joumaa's actions—July 2011 through November 2016—as well as the amount of money involved: "Ayman JOUMAA . . . is noted to allegedly move $200 million dollars a month on behalf of a designated entity."  *Id.*  Finally, the summary establishes the role that Joumaa plays, describing him as "the leader of a group of money launderers."  *Id.*[12]

These disclosures collectively apprise Joumaa "of the government's view regarding the basis for [his] designation[], and as such, [he] can meaningfully 'proffer rebuttal evidence and arguments to OFAC to contest [his] designation[].'"  *See Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017) (quoting *Zevallos*, 10 F. Supp. 3d at 131), *appeal filed*, No. 17-5075 (D.C. Cir. April 17, 2017).  They therefore provide sufficient notice under the Fifth Amendment.  *See id.*; *Zevallos*, 793 F.3d at 118 (rejecting SDNT's due process argument where, given the disclosures provided by OFAC, "[n]othing about the history of this case suggests that Zevallos has been forced to stumble towards a moving target").

Joumaa's remaining arguments concerning the notice he received, many of which are focused on OFAC's redactions of classified or law enforcement sensitive information, likewise fail to establish a violation under the Fifth Amendment.  First, Joumaa appears to argue that he has been provided inadequate notice because the information redacted from the administrative

---

[12] Joumaa's apparent suggestion that OFAC must provide SDNTs with a non-privileged and unclassified summary of otherwise privileged information is incorrect.  *See* Pl.'s Mem. at 31. "While courts have recognized that unclassified summaries of classified information on which an agency relied may be helpful to litigants, they are not required[.]"  *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 119 n.2 (D.D.C. 2015).

record is in the public domain. *See* Pl.'s Mem. at 32-33.   But Joumaa's claim regarding the

contents of the redacted information is based on nothing more than speculation, as he offers no

reason to believe that such information has been publicly disclosed. *See id.*   Further, the sole

case on which Joumaa relies, *Canning v. U.S. Department of Justice*, is inapposite; that case

involved a request under the Freedom of Information Act, not an alleged Fifth Amendment

violation, and says nothing about an agency's compliance with due process. *See* 567 F. Supp. 2d

85, 93-94 (D.D.C. 2008) (explaining that an agency may not withhold information under FOIA

Exemption 7(C) if that information is already in the public domain).[13]

Second, Joumaa suggests that he received inadequate notice because, in his view, the

administrative record is too heavily redacted. *See* Pl.'s Mem. at 34 ("The fact is that OFAC

provided a redacted administrative record—the redacted portions of which included the entire

section identifying the 'basis for designation.'").   But for the reasons discussed above, *supra* at

16-19, the non-privileged and unclassified portions of the record, including OFAC's March 2,

2018 letter to Joumaa and the March 9, 2018 non-privileged and unclassified summary,

sufficiently inform him of OFAC's grounds for the denial of his delisting request.   Further,

Joumaa overlooks the fact that "disclosure may not always be possible" where, as here, the

agency has redacted information because it is classified or privileged. *See FBME Bank Ltd.*, 125

F. Supp. 3d at 119 n.2 (quoting *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686

F.3d 965, 983 (9th Cir. 2012)).   And Joumaa does not oppose Defendants' position, and so seems

to concede, that he is not entitled to receive such information. *See* Pl.'s Mem. at 30-38; *see also,*

---

[13] Defendants also note that the premise of Joumaa's argument only detracts from his claim: if information redacted from the administrative record had already been made available to Joumaa through OFAC's public disclosures—which, to reiterate, it has not—he can hardly complain that he has not received notice of that information.

*e.g.*, *Jifry*, 370 F.3d at 1183-84; *Zevallos*, 793 F.3d at 113; *Kadi*, 42 F. Supp. 3d at 10, 23-24; *Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 72 (D.D.C. 2008).

Nor has Joumaa established that "Defendants' withholding of the evidentiary bases for its allegations regarding Plaintiff's conduct is seriously detrimental to Plaintiff's opportunity to provide a meaningful response, particularly insofar as the evidence withheld is used to reject Plaintiff's reconsideration petition." Pl.'s Mem. at 35. The basis for this argument appears to be Joumaa's assertion that, other than his ties to the Hassan Ayash Exchange Company, the New Line Exchange Trust Co., and the Ellissa Exchange Company, OFAC's 2011 decision did not describe "'other aspects of [his] vast drug trafficking and money laundering network.'" *Id.* at 35 (quoting Defs.' Mem. at 19). But OFAC's disclosures provide details beyond Joumaa's connections to these three entities. For example, in its 2011 press release OFAC also described the illicit activities undertaken by Joumaa: "Joumaa has coordinated the transportation, distribution, and sale of multi-ton shipments of cocaine from South America and has laundered the proceeds from the sale of cocaine in Europe and the Middle East." A.R. at 67; *see also id.* at 34, 36. OFAC explained the methods Joumaa used to launder these proceeds, such as "bulk cash smuggling operations," "Lebanese exchange houses," and "[t]he export of vehicles." *Id.* at 27; *see also id.* at 36, 67. OFAC further detailed the geographic extent of Joumaa's operations, *id.* at 27 (Joumaa exported cars "from the United States to West Africa"), *id.* at 67 ("Lebanon, West Africa, Panama and Colombia"); and a specific location—Caesar's Park Hotel—used to "broker drug trafficking and money laundering activities," *id.* at 67. Additionally, OFAC specified the amount of money laundered by Joumaa and his organization, *id.* at 27, 67, and the identities of Joumaa's criminal associates and front companies, *id.* at 66-67, as well as his relationship to these persons as "the leader" of a drug trafficking and money laundering organization, *id.* at 27,

66-67. The details provided in OFAC's subsequent disclosures, including its non-privileged and unclassified summary, further demonstrate that Joumaa can adequately respond to OFAC's findings. *See id.* at 1617.

Third, Joumaa claims that "[b]y failing to identify how the information contained within the unprivileged and unclassified summary relates to the redacted portions of the evidentiary memorandum . . . Plaintiff is unable to understand the manner in which OFAC is utilizing this information to support its findings or its ultimate conclusion." Pl.'s Mem. at 36. But OFAC has made clear that it relied on the information in the unclassified summary in determining that Joumaa continues to warrant SDNT designation. A.R. at 1615. Moreover, as Defendants have previously explained, the summary represents the extent of information releasable at this time. *See* Defs.' Mem. at 30 (citing A.R. at 1615-17). And Joumaa cites no authority—whether under *Mathews v. Eldridge*, 424 U.S. 319 (1976), or any other case—to support his argument that the interests protected by the government's national security classifications and privilege assertions should give way to Joumaa's desire to learn precisely how OFAC "is utilizing" information on which it has relied, *see* Pl.'s Mem. at 36.

Finally, Joumaa contends that OFAC's disclosures have denied him a meaningful opportunity to be heard. Pl.'s Mem. at 31. In light of the correspondence that he submitted and that OFAC subsequently reviewed, however, Joumaa cannot plausibly claim that he has been unable to respond to OFAC's decision to designate him as a SDNT. *See* A.R. at 87-98, 106-42, 397-410, 1394-1408; *Zevallos*, 10 F. Supp. 3d at 130 (rejecting argument that Zevallos was not provided a meaningful opportunity to be heard where "[t]he record shows that OFAC did review Mr. Zevallos's submissions and evidence, given that it explained Mr. Zevallos's arguments and why those arguments were not persuasive in its 2013 Evidentiary Memorandum"), *id.* at 131

("Mr. Zevallos's meaningful opportunity to be heard is further evidenced by the 2009 questionnaire OFAC sent to him in response to his renewal of his reconsideration request, and his opportunity to respond to that."); *Kadi*, 42 F. Supp. 3d at 29 ("Kadi's opportunity to be meaningfully heard is evidenced by the extensive submissions he made to challenge his continued designation.").

OFAC has thus adequately apprised Joumaa of the basis for its decision to designate him as a SDNT and its decision to deny his delisting request. He "remains free now to continue contesting his designation by filing new delisting requests, meaning that he can make any new arguments that occur to him and reiterate and expand any arguments he felt received short shrift on [OFAC's] last review." *Zevallos*, 793 F.3d at 117. Even if applicable to Joumaa, which he has failed to establish, this is all the Fifth Amendment requires. *Id.*; *see also Fares*, 249 F. Supp. 3d at 125-28; *Zevallos*, 10 F. Supp. 3d at 131.

### C.     OFAC Has Adequately Explained The Reasons For Its Decision

In his opposition and cross-motion, Joumaa also asserts a claim under 5 U.S.C. § 555(e), arguing that "OFAC's determination [that he is currently involved in narcotics trafficking] [is] devoid of detail or indication as to how the agency arrived at this conclusion." Pl.'s Mem. at 28. But as an initial matter, Joumaa's claim under § 555 is not properly before the Court. Count IV of Joumaa's Amended Complaint, while referencing 5 U.S.C. § 706, makes no mention of § 555. *See* Am. Compl. ¶¶ 54-58. Nor does Joumaa cite § 555 anywhere else in his Amended Complaint. *See generally id.* Because "[i]t is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing," the Court should dismiss Joumaa's claim under § 555. *See D.C. v. Barrie*, 741 F. Supp. 2d 250, 263-64 (D.D.C. 2010).

Joumaa's claim under § 555(e) also fails on the merits.  Section 555(e) requires that an agency's notice of denial of a "written application, petition, or other request of an interested person made in connection with any agency proceeding . . .  be accompanied by a brief statement of the grounds for denial[,]" "[e]xcept in affirming a prior denial or when the denial is self-explanatory."  This provision of the APA codifies "[a] fundamental requirement of administrative law [] that an agency set forth its reasons for decision."  *Quality Auto. Servs., LLC v. Pension Ben. Guar. Corp.*, 960 F. Supp. 2d 211, 221 (D.D.C. 2013) (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation marks omitted)).  "The D.C. Circuit has described the 'brief statement' requirement as 'minimal,' . . . requiring only that the agency explain 'why it chose to do what it did.'"  *Id.* (quoting *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010), and *Tourus Records*, 259 F.3d at 737); *see also Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 601 (D.C. Cir. 1980) ("The requirement of [§] 555(e) is modest.  Indeed, it probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review.").  As Judge Boasberg of this Court has explained, "[t]he agency explanations that the D.C. Circuit has branded too brief seem to be limited to single, conclusory sentences" or that "merely parrot[ ] the language of a statute without providing an account of how it reached its results."  *Remmie v. Mabus*, 898 F. Supp. 2d 108, 119-20 (D.D.C. 2012) (citations omitted).

As explained above, *supra* at 16-19, OFAC adequately set forth its reasons for denying Joumaa's delisting request in its letter dated March 2, 2018, along with the redacted evidentiary memorandum and non-privileged and unclassified summary of otherwise privileged information that OFAC subsequently provided to Joumaa.  OFAC has thus plainly satisfied the minimal requirements of 5 U.S.C. § 555(e); *see also Zevallos*, 10 F. Supp. 3d at 124 (rejecting SDNT's

§ 555(e) argument because "[a]long with OFAC's decision, he also received a memorandum setting forth the reasons for the denial, with citations to numerous exhibits").[14]

The Court should therefore dismiss Joumaa's claims in Count IV pursuant to Rule 12(b)(1) or, in the alternative, grant summary judgment to Defendants pursuant to Rule 56.

## CONCLUSION

The Court should grant Defendants' motion to dismiss or, in the alternative, for summary judgment, and should deny Joumaa's cross-motion for summary judgment.

Dated May 18, 2018                              Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

DIANE KELLEHER
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

Counsel for Defendants

---

[14] For the same reasons, OFAC's explanation satisfies any requirements of § 706. *See Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (stating that although "[a]n agency must . . . 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made,'" a reviewing court should nonetheless "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned" (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).