**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| AYMAN SAIED JOUMAA | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 17-2780 (TJK) |
| v. | ) | |
| | ) | |
| STEVEN MNUCHIN, *et al.* | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR
SUMMARY JUDGMENT</u>**

## INTRODUCTION

Plaintiff's Cross-Motion for Summary Judgment demonstrated that Defendants Secretary of the Treasury Steven Mnuchin and the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") acted arbitrarily and capriciously and in excess of the statutory authorities granted to them under the Administrative Procedure Act ("APA") and the Foreign Narcotics Kingpin Designation Act ("Kingpin Act") in determining that Plaintiff continues to play a significant role in international narcotics trafficking, and accordingly, in denying his request for reconsideration of his designation under the Kingpin Act.  *See* ECF No. 11-12 ("Pl.'s Mem.")

Plaintiff's argument in the Cross-Motion is correct for three reasons: 1) OFAC solely relied on a factor (i.e., credibility) that Congress did not intend to be considered by itself as a basis for determining whether a foreign person plays a significant role in international narcotics trafficking; 2) OFAC relied upon allegations and evidence that are historical in nature to support its determination; and 3) OFAC relied upon allegations and evidence that—although phrased to sound illicit in nature—have no apparent connection to drugs or controlled substances.

As a result, OFAC acted outside of the authority granted to the Executive through the Kingpin Act, and made determinations that fail to satisfy the plain language of the Act's designation criteria and definition of narcotics trafficking.  If upheld, OFAC's actions will render its ability to maintain designations under the Kingpin Act limitless, and transform a tool intended to compel behavior changes within the frame of global narcotics trafficking into a mechanism for permanent punishment.

Defendants' Opposition to Plaintiff's Cross-Motion for Summary Judgment fails to challenge—and often entirely ignores—Plaintiff's arguments.   Instead, Defendants address

arguments that Plaintiff did not raise and does not purport to assert. In doing so, Defendants engage in *post-hoc* rationalizations for OFAC's action that are unsupported by the record.

Rather than tackle Plaintiff's arguments head-on, Defendants seek to frame Plaintiff's arguments to make them seem analogous to those presented in the case on which they principally rely—*Zevallos v. Obama*. However, Plaintiff is not Mr. Zevallos and has not raised the same arguments addressed in *Zevallos*. Nor is Plaintiff challenging OFAC's interpretation of the evidence. Instead, Plaintiff is challenging OFAC's misinterpretation and misapplication of the law. Plaintiff's response here countermands Defendants' attempt to re-cast the instant case into one like *Zevallos* where courts have proven deferential to OFAC's analysis of the evidence before it. Given the plain language of the law and record, such deference is inapplicable here and cannot shield Defendants from Plaintiff's arguments.

To be clear, Plaintiff has argued that Defendants relied solely upon Plaintiff's credibility in order to determine that he meets the criteria for designation under the Kingpin Act, and that Plaintiff's credibility—standing alone—is not a factor that Congress intended to be considered in making such determinations. Plaintiff's argument is supported by the express language in OFAC's denial; in the relevant sub-section headings of OFAC's evidentiary memorandum; and in the body of those same sub-sections. As such, Defendants' representations to the Court that Plaintiff is attempting to argue that OFAC cannot make credibility determinations, and that Plaintiff is requesting that the Court test the credibility of OFAC's evidence, are simply untrue.

Further, Plaintiff has argued that OFAC cannot support its determination that he "continues to meet the criteria for designation"—i.e., that his conduct is ongoing—by relying on evidence that is historical in nature and/or lacking a connection to narcotics trafficking, as defined by the

Kingpin Act.  The Kingpin Act requires recent and ongoing activity—not necessarily activity occurring simultaneous to the denial action.  Defendants' suggestion that Plaintiff's argument requires OFAC to provide irrefutable evidence that a party has *engaged* in narcotics trafficking activities on or near the date of the denial decision is false.  *See* Def.'s Mem. at 7 (emphasis added). Plaintiff makes no such argument and merely refers the Court to the plain language of the Kingpin Act's designation criteria to show that any purported narcotics trafficking must be recent and ongoing.

Finally, Plaintiff asserts that the totality of OFAC's evidence—whatever it may comprise—does not demonstrate that Plaintiff is involved in recent ongoing conduct that meets the definition of narcotics trafficking contained in the Kingpin Act.  This is because all of OFAC's evidence and allegations are either historical in nature or disconnected from drugs or controlled substances.  Plaintiff's argument is not—as Defendants represent—that each piece of OFAC's evidence must, in isolation, expressly relate to narcotics trafficking. Def's Mem. at 12.  Rather, it is that OFAC cannot rely upon any evidence or allegation—as it has—that is phrased in the past tense as having occurred (as opposed to occurring), and is dated nearly four (4) years ago, to support a conclusion that Plaintiff is engaged in recent and ongoing narcotics trafficking activities. Nor can OFAC allege activity that makes no connection to drugs or controlled substances and bridge any logical gaps by asserting that Plaintiff's prior alleged conduct was drug related, so any recent activity must also be drug related.  Such fuzzy reasoning is not supported by the Kingpin Act's clear criteria for designation, nor by its express definition of narcotics trafficking.

Affirming OFAC's convoluted determination here would produce absurd results.  In short, it would require parties designated under the Kingpin Act to admit to everything OFAC alleges, or be found incredible, and thereby meet the criteria for designation either way; it would allow

OFAC to find that a party continues to play a significant role in international narcotics trafficking because of historical information; and it would grant permission for OFAC to conflate any activity that could in the abstract be a method, mean, or manner of narcotics trafficking with actual narcotics trafficking activity, regardless of whether there is any evidence that the activity is in fact related to drugs or controlled substances.  Such results are unintended by the Kingpin Act and exceed the constraints Congress placed on the Executive's authority under the statute.

In short, OFAC is seeking to impermissibly expand its defined authority in order to suit the information that the agency possesses.  Such expansion, however, does not comport with the criteria for designation established by Congress, nor the limitations it imposed in the Kingpin Act. The reasoning supplied by OFAC through the administrative record cannot support a determination that Plaintiff is playing a significant role in international narcotics trafficking as defined by the Kingpin Act.  For these reasons and those discussed below, Plaintiff respectfully requests that Plaintiff's Cross-Motion for Summary Judgment be granted.

## DISCUSSION

I.   **Defendants Acted Arbitrarily and Capriciously and In Excess of Statutory Authority In Determining that Plaintiff Continues to Meet the Criteria for Designation Under the Kingpin Act**

Defendant OFAC concluded that Plaintiff Ayman Saied Joumaa "continues to play a significant role in international narcotics trafficking . . . [and] [t]herefore, JOUMAA's reconsideration request and removal from the SDN List should be denied." A.R. at 0017. Defendants based this determination entirely on a factor unrelated to the legal criteria for designation under the Kingpin Act (i.e., Plaintiff's credibility) and they have wholly failed to

provide evidence linking Plaintiff to recent and ongoing narcotics trafficking, or activity related to drugs and controlled substances, as required by the Kingpin Act.

Defendants' Memorandum in Opposition to Plaintiff's Cross Motion for Summary Judgment, ECF No. 15 ("Def.'s Mem."), now misrepresents the reasoning contained in the evidentiary memorandum supporting OFAC's determination that Plaintiff continues to meet the criteria for designation.   In order to support OFAC's unlawful determination, Defendants impermissibly offer a series of *post-hoc* rationalizations, reconstrue OFAC's evidence, and wrongly equate the agency action here with other OFAC designation cases.

### A.   OFAC Based Its Determination that Plaintiff Meets the Criteria for Designation Solely on Plaintiff's Alleged Lack of Credibility

Defendants determined that Plaintiff "continues to meet the criteria for designation" solely on the basis of Plaintiff's perceived lack of credibility.  Defendants' contention that Plaintiff has "mischaracterize[d] OFAC's decision . . . ," and that "OFAC expressly based its denial decision on its determination that Joumaa continues to meet the criteria for designation under the Kingpin Act, not simply that he lacks credibility," is unavailing.  *Id.* at 2-3.

OFAC's March 2, 2018 denial letter explicitly states that "[a]fter reviewing all of the evidence before OFAC . . . OFAC does not find credible Mr. Joumaa's claims . . . that he is not 'currently engaged in conduct that contributes to narcotics trafficking or money laundering in support of narcotics trafficking.'  Accordingly, Mr. Joumaa's request for reconsideration is denied because he continues to meet the criteria under the Kingpin Act." A.R. at 1612-1614.

Furthermore, the sub-headings of Section IV of OFAC's evidentiary memorandum— entitled "Arguments"—all address Plaintiff's alleged lack of credibility. *See e.g.*, A.R. at 0004 ("JOUMAA unpersuasively denies that he was involved in narcotics trafficking activities at any time."); A.R. at 0007 ("JOUMAA continues to be involved in money laundering activities, and his

claims to the contrary are not credible."); A.R. at 0009 ("JOUMAA's claims about his relationships, business or otherwise, with previously designated individuals are not credible."); A.R. at 0016 ("Other Information Relevant to Credibility").[1]

Defendants attempt to rationalize OFAC's evidentiary memorandum to "save" the agency from its unlawful action. One example of such *post-hoc* rationalization is Defendants' argument that Plaintiff "has no basis to assert" that subsection 2 of Section IV—titled "JOUMAA continues to be involved in money laundering activities, and his claims to the contrary are not credible"—is directed at Plaintiff's credibility. *Id.* at 3 (quoting Pl.'s Mem. at 23 and A.R. at 0007). But the language of the subsection is explicit: OFAC's purported evidence of Plaintiff's continued involvement in money laundering is presented to attack his credibility, not to establish an independent basis by which Plaintiff continues to meet the criteria for designation under the Kingpin Act. *See* A.R. at 0007 ("Based on the information available to OFAC, JOUMAA's claim that he is not currently involved in money laundering is not credible.").

Defendants further contend that Plaintiff "has no basis to assert that 'Subsection 2 . . . does not show (and does not even purport to show) that Plaintiff 'continues to be involved in money laundering activities' in support of narcotics trafficking.'" *Id.* at 3-4 (quoting Pl.'s Mem. at 23 and A.R. at 0007). Defendants, though, make no attempt to show how subsection 2 of Section IV

---

[1] The remaining sub-headings in Section IV of the evidentiary memorandum do not establish an independent basis under which OFAC could determine that Plaintiff continues to play a significant role in international narcotics trafficking, and are included to suggest the unreliability of Plaintiff's assertions or evidence. Those sub-headings are, variably, dedicated instead to reciting all of the documents submitted by Plaintiff to OFAC during the reconsideration matter; stating that the information relied upon by OFAC is reliable; and noting that certain Lebanese legal proceedings relating to Plaintiff are not probative for purposes of Plaintiff's delisting request. A.R. at 0012-0016. Inevitably, all of OFAC's arguments, and the evidence offered in support, relate back to whether or not Plaintiff's representations that he does not in narcotics trafficking activities are credible.

alleges Plaintiff's relation to narcotics trafficking, or money laundering activities related to drug or controlled substances.

Defendants next proceed to argue that "Joumaa's broader suggestion that OFAC cannot make credibility determinations in evaluating a delisting request finds no basis in law or logic." Def.'s Mem. at 5.  But Defendants misconstrue Plaintiff's claim—Plaintiff does not argue that OFAC cannot "weigh" the evidence presented by Plaintiff to determine its credibility.  Instead, Plaintiff contends that OFAC made a determination that Plaintiff continues to play a significant role in international narcotics trafficking solely based on its view that some of the representations made by Plaintiff during the reconsideration process were not credible.[2]

Credibility, in the sense employed by Defendants, is mentioned nowhere in the Kingpin Act nor its legislative history, and is simply not a factor that Congress intended Defendants to

---

[2] OFAC did not take issue with the overwhelming majority of representations made by Plaintiff during the reconsideration matter before the agency.  For example, OFAC took no issue with 144 of the 150 representations Plaintiff made concerning relationships with individuals and entities for which OFAC inquired.   A.R. 0009-0012, 0107-0130.   Defendants, however, now attempt to rationalize OFAC's decision making with respect to certain those representations. A prime example of this is Defendants' assertion that "OFAC reasonably found Joumaa's statements regarding his lack of a relationship with the Ellissa Exchange Company to be unreliable and insufficient to warrant delisting." Def.'s Mem. at 6.  But OFAC's evidentiary memorandum claims that Joumaa "[did] not address the other aspects of [his] drug trafficking and money laundering network that served as the basis for his designation, such as the Ellissa Exchange Company." A.R. at 0015.  When Plaintiff noted in his Cross-Motion for Summary Judgement that he had denied that relationship, Defendants stated that OFAC found the denial to be unreliable. Def.'s Mem. at 6.   However, OFAC's record claimed that it was not addressed; not that it was unreliable. A.R. 0015.  Such *post-hoc* rationalizations cannot be used to advance Defendants' position. *See Kaiser Foundation Hospitals v. Sebelius*, 828 F.Supp.2d 193, 198 (D.C. Cir. 2011) "[C]ounsel's 'post hoc rationalizations' cannot substitute for an agency's failure to articulate a valid rationale in the first instance." (citing *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dept. of Health & Human Servs.*, 396 F.3d 1265, 1276 (D.C. Cir. 2005); see *Burlington Truck Lines v. United States,* 371 U.S. 156, 169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury*, 750 F.Supp.2d 150, 155 (D.D.C. 2010)."

consider when determining whether a foreign person is playing a significant role in international narcotics trafficking. *See* 21 U.S.C. §§ 1904(b)(4), 1907(3).

Defendants' alternative arguments are likewise unavailing.   First, Defendants point to *Zevallos v. Obama*, which "declined to find OFAC's denial decision arbitrary and capricious where the agency made credibility determinations with which the SDNT disagreed." 10 F. Supp. 3d 111, 123 n.9 (D.D.C. 2014), *aff'd* 793 F.3d 106 (D.C. Cir. 2015).  The instant matter, however, is easily distinguished from *Zevallos*.

OFAC based its denial of Zevallos' delisting request not merely on the agency's view as to Zevallos' credibility but also "on five different sets of evidence," including, "newspaper articles discussing the recent seizure of assets [derived from narcotics trafficking] he continued to control in Panama," "newspaper articles discussing new charges filed against him in Peru in 2011 and 2012 [regarding his alleged narcotics trafficking and money laundering]," "newspaper articles discussing his ongoing control of assets [derived from narcotics trafficking] in Peru;" "newspaper articles discussing the recent discovery of an illicit cellphone and memory stick in his prison cell in Peru;" and "his 2007 criminal indictment in the Southern District of Florida [for dealing in property blocked as a result of his SDNT designation]." *Zevallos v. Obama*, 793 F.3d at 112 (D.C. Cir. 2015).   As such, in *Zevallos* OFAC expressly relied on recent open source evidence of continuing drug trafficking activity from prison; continued control of assets derived from narcotics trafficking; and pending criminal charges related to narcotics trafficking to demonstrate recent and ongoing conduct meriting continued designation under the Kingpin Act.

Plaintiff's matter is distinct from the facts in *Zevallos*.  OFAC's evidentiary memorandum in this case relies on Plaintiff's purported lack of credibility as the sole factor in support of their determination that Plaintiff continues to meet the criteria for designation.   Further, OFAC's

administrative record does not include anything remotely resembling the broad spectrum of recent evidence of ongoing conduct related to drugs, drug proceeds, and assets obtained through drug proceeds present in *Zevallos*. Thus, *Zevallos* provides no support for OFAC's impermissible actions. As a result, Defendants' sole reliance on Plaintiff's credibility to meet the relevant designation criteria distinguishes it from any of the cases dealt with by this—and other—courts.

As Plaintiff continues to note "[t]he plain language of § 1904(b)(4) . . . bars Defendants from designating on the basis of conduct that is historical or unrelated to the illicit cultivation, production, manufacture, distribution, sale, financing, or transportation of narcotic drugs." Pl.'s Mem. at 16. This interpretation properly identifies those factors that Congress intended to be considered in determining if a foreign person plays a significant role in international narcotics trafficking. See 21 U.S.C. § 1904(b)(4). Defendants did not restrain their reasoning for their determination that Plaintiff continues to meet the designation for criteria under the Kingpin Act to these factors, nor did they make any attempt to interpret the statute to define the factors relevant to that determination. *ACA International v. FCC*, No. 15-211 at *21 (D.C. Cir. Mar. 16, 2018) ("Administrative action is 'arbitrary and capricious [if] it fails to articulate a comprehensible standard' for assessing the applicability of a statutory category." (citing *United States Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 754 (D.C. Cir. 2015))).

Defendants have failed to offer adequate support to establish that a perceived lack of credibility can be a factor relied upon to conclude that a party meeting the criteria for designation under the Kingpin Act, and it is clear that Defendants do not believe the Kingpin Act imposes any limitations on what they may deem relevant in designating a party under 21 U.S.C. § 1904(b)(4). Thus, their decision is arbitrary and capricious under the APA. *Empresa Cubana Exportadora v. U.S. Dep't of Treasury*, 516 F. Supp. 2d 43, 53 (D.D.C. 2007) (finding that in its application of the

"arbitrary and capricious" standard under the APA—"a court should ascertain whether the agency has relied on *factors* which Congress has not intended it to consider . . )(emphasis added).

> **B.      OFAC's Purported Substantial Evidence Supporting Ongoing Narcotics Trafficking Activities Impermissibly Relies Upon Historical Conduct or Conduct Irrelevant to the Criteria for Designation**

Defendants argue that "substantial evidence supports OFAC's conclusion that Joumaa's illicit activities are ongoing…" and that "neither [the Kingpin Act] nor the APA requires OFAC to produce irrefutable evidence that Joumaa was engaging in narcotics trafficking on or even near the date the agency reached its denial decision."  Def.'s Mem. At 7.  Defendants misrepresent the operative legal standard.

The Kingpin Act requires that the Defendants show that Plaintiff plays a significant role in international narcotics trafficking. 21 U.S.C. § 1904(b)(4).  The plain language of the statute requires evidence supporting a rational basis to conclude that a foreign person is engaged in recent and ongoing narcotics trafficking.  Thus, OFAC is entitled to no deference as to whether it can consider such a factor.  See *Eagle Broad. Grp., Ltd. v. FCC,* 563 F.3d 543, 552 (D.C. Cir. 2009) ("If the search for the plain meaning of the statute yields a clear result, then Congress has expressed its intention as to the question, and deference is not appropriate.")(citing *Bell Atlantic Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997)).

Defendants' reliance on historical conduct or conduct unrelated to the criteria for designation—when viewed through the prism of other evidence accepted by OFAC showing Plaintiff's divestment from and cessation of relationships with certain designated entities—does not establish a rational basis to conclude Plaintiff continues to play a significant role in international narcotics trafficking.  Thus, it does not constitute substantial evidence.  *See Ass'n of Datat Processing Serv. Orgs., Inc. v. Bd. Of Governors of the Fed. Reserve Sys.*, 745 F.2d 677,

683 (D.C. Cir. 1984) (holding that "the substantial evidence test and the arbitrary and capricious test are one and the same.")  OFAC must have more contemporaneous evidence linking Plaintiff to activities related to ongoing narcotics trafficking. *See* Pl.'s Memo. at 24-29.

Plaintiff does not argue that OFAC needs "direct evidence that [an SDNT] was engaging in narcotics trafficking on the very date it reached its decision." Def.'s Mem at 8.  What the Kingpin Act does requires, however, is that Defendants provide evidence showing that Plaintiff is engaged in recent and ongoing narcotics trafficking. *See* Pl.'s Memo. at 24-29.  *Zevallos* affirms that point and is instructive when considering what evidence demonstrates ongoing narcotics trafficking activities.

In *Zevallos*, OFAC presented open-source evidence that three (3) years prior to Zevallos' denial of his request for reconsideration of his Kingpin Act designation he was still controlling assets that were ordered to be seized in 2007 as part of narcotics trafficking investigation. Moreover, OFAC provided evidence that four (4) months prior to its denial that Zevallos was using an employee of a Peruvian government official to control those assets.  No allegations even remotely close to those made against Zevallos have been leveled against Plaintiff.  Indeed, OFAC's most recent purported evidence is that a year-and-a-half before OFAC's denial decision, Plaintiff moved money on a ship owned by parties formerly designated by OFAC.

In addition, the Peruvian Government brought narcotics trafficking criminal charges against Zevallos less than two (2) years prior to OFAC's denial decision.  Zevallos was also charged by the Peruvian Government with narcotics related money laundering in 2012, approximately one (1) year prior to OFAC's denial decision.  Both of those prosecutions were for conduct that occurred a number of years after Zevallos' Kingpin Act designation and were pending at the time of OFAC's denial decision.   In contrast, narcotics trafficking charges were brought

against Plaintiff nearly seven (7) years prior to OFAC's denial decision and for conduct that predated his designation.  Further, when investigated in Lebanon for alleged money laundering, the Lebanese court dismissed the investigation for lack of evidence.  Notably, the U.S. government did not respond to the Lebanese prosecutors' request for evidence to support their prosecution of Plaintiff.[3] A.R. at 1363-1377.

OFAC also presented evidence in *Zevallos* that—less than a month before its denial decision—a cell phone was found in Zevallos' prison cell and his accused drug partner was found with a hands-free device in his prison cell.  OFAC further presented open-source evidence from less than four (4) months prior to its denial decision that incarcerated narcotics traffickers continued their operations through their lieutenants from inside prisons using banned cell phones and that Peruvian authorities were actively blocking cell phone signals emanating from their jails. No similar allegations have been made by OFAC here.  OFAC has also failed to provide any evidence that Plaintiff continues to communicate with his former alleged drug trafficking confederates, and merely indicates that it has classified (or privileged) evidence showing Plaintiff was "associated" with a SDNT four (4) years ago.

Finally, in *Zevallos*, OFAC relied upon U.S. criminal charges brought against Zevallos in 2007.  Those charges related to conduct occurring after Zevallos' Kingpin Act designation and related to the disposition of assets blocked pursuant to his designation.  Although Plaintiff has a pending criminal charges in the United States, the alleged conduct is close to ten (10) years old, and is purported to have occurred prior to his OFAC designation.

---

[3] OFAC has previously relied upon, and the *Zevallos* court considered, criminal investigations and prosecutions occurring in foreign courts, but in Plaintiff's case OFAC asserts that the dismissal of the Lebanese criminal investigation is not probative.

It is for the foregoing reasons that the district court concluded that "the post-designation record as a whole . . . 'adequately supports the ultimate decision.'" *Zevallos*, 10 F. Supp. 3d. at 122-23.  OFAC's administrative record in Plaintiff's case does not—and cannot—support similar reasoning.

Despite the stark differences in the two cases, Defendants nevertheless argue that—"[i]n light of *Zevallos*"—"Plaintiff cannot persuasively argue that the date of information considered by OFAC demonstrates that the agency's decision was unsupported by substantial evidence."  Def's Mem. at 9.  But, as discussed above, *Zevallos* involved evidence of activity that occurred as recent as a few weeks prior to OFAC's denial decision in his case.  In the instant matter, even OFAC's most recent evidence allegedly connected to dealings in drug proceeds is approximately four (4) years old.[4] A.R.  at 1617.

As Plaintiff noted in his Memorandum in Support of Motion for Summary Judgment, "[t]he evidence put forth by the agency is either (1) historical in nature; or (2) unrelated to narcotics trafficking." Pl.'s Mem. at 21.  For instance, OFAC stated that (1) "[a]s of July 2011, a Colombian individual was laundering drug proceeds for Ayman JOUMAA;" (2) "[a]s of March 2013, a Colombian money launderer, later designated as an SDNT by OFAC, uses Ayman JOUMAA to launder money in Europe;" (3) "[a]s of 2014, Ayman JOUMAA is associated with a designated SDNT individual in the pick up of bulk drug proceeds in Europe to launder to Colombia;" (4) "[a]s of 2016, Ayman JOUMAA oversees money laundering operations between Lebanon, Colombia, and Venezuela;" (5) "[a]s of June 2016, Ayman JOUMAA is noted to currently be the leader of a group of money launderers;" and (6) "[a]s of November 2016, Ayman JOUMAA utilized a

---

[4] OFAC's most recent evidence is approximately eighteen (18) months old, but makes no reference that his purported activities were related to drugs or controlled substances.

shipping company associated with a previously OFAC designated individual to move money . . ."[5] Def.'s Mem. at 9.

Claims (2), (4), (5), and (6) make no reference to narcotics whatsoever and thus fail to allege conduct relating to the Kingpin Act's definition of narcotics trafficking. 21 U.S.C. § 1907(3). Claims (1) and (3) are historical in nature and do not purport that the alleged conduct is ongoing, and are stated in the past tense—i.e., "was laundering" and "as of 2014, Ayman Joumaa is associated with…" A.R. 1617. Moreover, claims (1) and (3) predate Plaintiff's reconsideration matter during which OFAC accepted that Plaintiff had divested from or ceased relationships with certain designated parties with whom he was formerly alleged to be related.

OFAC's evidence, as described above, does not demonstrate that Plaintiff is engaged in recent and ongoing activity. As such, they have failed to satisfy the designation criteria established by the Kingpin Act and, therefore, their determination that Plaintiff continues to meet the criteria for designation is not in accordance with law and in excess of statutory authority. As such, OFAC's action is arbitrary and capricious and should be overturned by this Court.

### C. Defendants Acted Arbitrarily And Capriciously By Finding That Joumaa Plays A Significant Role In International Narcotics Trafficking

Defendants fail to show how the evidentiary memorandum justifying OFAC's determination under the Kingpin Act lawfully supports a finding that Plaintiff continues to play a significant role in international narcotics trafficking. Instead, they seek to assert that "substantial evidence supports OFAC's finding that Joumaa plays a significant role in international narcotics

---

[5] Other sentences are contained in the 2018 Denial Section of OFAC's "Non-privileged and Unclassified Summary of Otherwise Privileged Information," however, those sentences make no reference to dates, or even years, in which the purported conduct occurred. A.R. 1617.

trafficking," regardless of whether each discrete piece of evidence connects Plaintiff to narcotics trafficking. Def's Mem. at 11.

Plaintiff acknowledges the Court's task is to determine whether all the evidence in the administrative record "together provides adequate basis to justify [OFAC's] determination" that a given designee meets the criteria for designation under the Kingpin Act. Def's Mem. at 12 (citing *Zevallos*, 793 F.3d at 114). But, as Plaintiff has noted, OFAC's evidence, even taken together, fails to support Defendants' finding that Plaintiff continues to meet the criteria for designation given that OFAC's evidence is wholly focused on attacking Plaintiff's credibility regarding historical conduct or conduct unrelated to narcotics trafficking. *See e.g.*, Pl.'s Mem. at 17-24. This reasoning in support of continuing Plaintiff's designation under the Kingpin Act simply cannot be supported by the plain language of the statute. As a result, Plaintiff's action in arbitrary and capricious and should be overturned by this Court. *Bell Atlantic Tel. Cos. v. FCC*, 131 F.3d 1044, 1049 (D.C. Cir. 1997) (stating that the court "will not uphold an interpretation 'that diverges from any realistic meaning of the statute.'") (citing *Massachusetts v. Dep't of Transp.*, 93 F.3d 890, 893 (D.C. Cir. 1996)).

Defendants further argue that "OFAC considered evidence of Joumaa's own prior drug trafficking and related money laundering, as well as evidence that, subsequent to his designation, Joumaa has continued to be involved in the laundering of drug proceeds; is associated with other SDNTs; and oversees international money laundering networks." *Id*. at 14. But this is a *post-hoc* rationalization unsupported by the evidentiary memorandum underlying OFAC's determination that Plaintiff continues to meet the criteria for designation. *See supra* p. 6-11.

As noted throughout this reply, the plain language of Section IV of OFAC's evidentiary memorandum only discusses the credibility of Plaintiff's representations made during the

reconsideration process, OFAC's prior evidence, the non-probative value of foreign court proceedings, and the reliability of OFAC's fact-finding process.  All of these categories are used to demonstrate that Plaintiff's representations are unreliable and lack credibility; and, accordingly, Plaintiff meets the basis for designation under the Kingpin Act.

Defendants now seek to state that those arguments, and the evidence and allegations upon which they rely, constitute substantial evidence to show that Plaintiff is engaged in recent and ongoing narcotics trafficking activities and thus meeting the Kingpin Act's criteria for designation. Plaintiff invites the court to read the language of that evidentiary memorandum.  It is plain. OFAC has failed to make such an argument, and Defendants' attempt to now argue that the totality of the circumstances demonstrates substantial evidence in support of OFAC's conclusion are unavailing.

On its face, such argument is a *post-hoc* rationalization unsupported by the record, and thus arbitrary and capricious.  *See Burlington Truck Lines v. U.S.*, 371 U.S. 156, 168-9 (1962) (stating that "[t]he court may not accept appellate counsel's *post-hoc* rationalizations for agency action" and that "an agency's discretionary order [must] be upheld, if at all, on the same basis articulated . . . by the agency itself"); *Securities Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (holding that "a simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action . . . ").

## II.   Defendants Failed To Provide Adequate Notice Of The Factual Basis For Determining That Plaintiff Continues To Meet The Criteria for Designation Under The Kingpin Act

Defendants are wrong to contest Plaintiff has no standing to assert a Fifth Amendment constitutional right, or, in the alternative, that the notice provided was adequate. *See* Def.'s Memo at 15-23.  Plaintiff has standing to assert a Fifth Amendment violation, as evidenced not only in Plaintiff's Amended Complaint but in the administrative record underlying this matter. *See e.g.*, Am. Compl. at 3; A.R. at 0406.  In addition, Defendants have entirely failed to provide Plaintiff with adequate notice of the factual bases upon which Defendants determined that he continues to meet the criteria for designation under the Kingpin Act.

For these reasons, Defendants have violated Plaintiff's Fifth Amendment due process rights and denied him a meaningful opportunity to respond to the evidence supporting OFAC's determinations.

### A.   Plaintiff Has Standing To Assert A Fifth Amendment Violation Of His Constitutional Due Process Rights

Defendants contend that Joumaa is "a foreign national without sufficient contacts with the United States" and, as such, "lacks standing to assert rights under the Fifth Amendment." Def.'s Mem. at 15.  Defendants, however, fail to analyze whether Plaintiff's contacts with the United States support a Fifth Amendment due process claim.  In the Amended Complaint, Plaintiff noted that "Defendants' actions have caused Plaintiff significant personal and financial harm, including the blocking of two wire transfers of funds totaling approximately $340,000.00." Am. Compl. at 3.  These are funds blocked in the United States in which Plaintiff holds an interest.  Moreover, the administrative record underlying the maintenance of Plaintiff's designation includes further discussion of these blocked funds, noting, for instance, that Plaintiff "hold[s] an interest in funds

blocked in the United States.  Specifically, Wells Fargo Bank N.A. blocked two wire transfers involving an interest of Goldi Electronics," the amounts comprising $169,491.25 and $167,097.25, respectively. A.R. at 0406.  *See also New Vision Photography Program, Inc. v. Dist. Of Columbia*, 54 F. Supp. 3d 12, 23 (D.D.C. 2014) (holding that "courts may consider 'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'").  While Defendants now dispute Plaintiff's interest in the funds at issue, they provide no analysis as to why the funds do not constitute a sufficient contact with the United States to merit a constitutional right to due process.

Defendants' reliance on *Jifry v. FAA* is misplaced.  In *Jifry*, the court reiterated long-standing precedent that "non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections," while also noting that "[e]xceptions may arise where aliens have come within the territory of the United States and established 'substantial connections' with this country or 'accepted some societal obligations.'" 370 F.3d 1174, 1182-83 (D.C. Cir. 2004).  Moreover, the *Jifry* court did not "decide whether or not Jifry . . . [is] entitled to constitutional protections because, even assuming [he is], [he has] received all the process that [he is] due under our precedent." *Id.*  Contrary to Defendants' claims, the D.C. Circuit "has not explicitly address[ed] what criteria this Court should apply in considering whether a foreign national residing outside the United States can satisfy the 'substantial connection' test to raise rights under the U.S. Constitution relating to the blocking or freezing of his assets." *Kadi v. Geithner*, 42 F. Supp. 3d. 1, 25 (D.D.C. 2012).  This includes "whether such rights turn on the presence of property in the [U.S.] . . ." *Id.*  Analogizing to cases in which "the D.C. Circuit has addressed whether foreign nationals have rights under the U.S. Constitution in the context of [Foreign Terrorist Organization designations]," the court noted that "[t]hese cases have looked to

the presence of property as the benchmark for satisfying the 'substantial connections' tests, and whether a party has the ability to raise constitutional claims, at least with respect to that property." *Id.* at 26.

      **B.**      **Defendants Violated Plaintiff's Fifth Amendment Due Process Rights By Denying Him Adequate Notice Of The Factual Basis Of His Designation And A Meaningful Opportunity To Be Heard**

First, Defendants argue that "Joumaa incorrectly suggests that the Court's inquiry should be limited to reviewing the redacted evidentiary memorandum and the non-privileged and unclassified summary of otherwise privileged information provided to Joumaa by OFAC," contending that the Court "should also consider OFAC's letter dated March 2, 2018 . . . which extensively discussed the reasons for OFAC's conclusion that Joumaa failed to establish an insufficient basis for the designation or that the circumstances have changed such that the designation is no longer warranted." Def.'s Mem. at 16-17.

But Plaintiff makes no suggestion of this kind and, indeed, urges the Court to review the March 2, 2018 letter. That letter is part of the administrative record and provides additional support for Plaintiff's claim that OFAC's action was solely based on Plaintiff's perceived lack of credibility. *See* A.R. 1612-1614. Plaintiff would note, however, that the March 2, 2018 letter does not disclose any *additional* bases under which OFAC determined that Plaintiff continues to meet the criteria for designation. Rather, the letter simply summarizes OFAC's reasons for taking the action and recites the information OFAC reviewed in reaching its ultimate conclusion. None of this addresses Plaintiff's argument that Defendants have withheld the bases for OFAC's determination that Plaintiff continues to meet the criteria for designation and that, in doing so, Defendants have thus denied Plaintiff a meaningful opportunity to respond to OFAC's action. *See* Pl.'s Mem. at 30-37.

Second, Defendant's contention OFAC's evidentiary memorandum purports to "detail the methods, amounts, and locations of [Plaintiff's] illicit activities," "states that [Plaintiff] 'continues to be involved in money laundering activities' and that . . . [Plaintiff] engaged in illicit activities such as money laundering on behalf of Pedro Claver Mejia Salazar," and "describes and responds to the documents submitted by [Plaintiff] . . . and explains why those submissions are insufficient . . ." seeks to hide the fact that such material is insufficient to meet its due process obligations.  Def.'s Mem. at 18.  Further, the information fails to provide adequate notice as to the factual basis of OFAC's determination that Plaintiff meets the criteria for designation under the Kingpin Act.

While Defendants claim that OFAC provided information on methods, amounts, and locations of Plaintiff's illicit activities, this information is presented in such a way so as to bar him from a meaningful opportunity to respond to it.  Were OFAC to allege that Plaintiff engaged in X activity at Y location on Z date, then Plaintiff would be afforded a meaningful opportunity to rebut the alleged fact, including by providing information demonstrating to the satisfaction of the agency that Plaintiff was not at Y location on Z date but was at a different location and thus could not possibly have engaged in the alleged activity.

That kind of detail has not been afforded to Plaintiff.  Instead, OFAC's non-privileged and unclassified summary sets forth allegations for which Plaintiff's rebuttal is impossible.  OFAC states that "[a]s of 2014, Ayman JOUMAA is associated with a designated SDNT individual in the pick up of bulk drug proceeds in Europe to launder to Colombia." A.R. at 1617.  If OFAC's information is erroneous, however, it is unclear how OFAC's notice here provides Plaintiff a meaningful opportunity to rebut the allegation.   Plaintiff would be forced to issue a blanket denial in response, but  OFAC has shown that such denials of alleged conduct will be utilized to attack

his credibility and that credibility findings will ultimately support OFAC's determination that Plaintiff meets the designation for criteria under the Kingpin Act.[6] Plaintiff is thus left incapable of offering substantive counter-evidence that could prove OFAC's information erroneous, as OFAC's disclosure lacks the specificity needed to meaningfully respond.[7] Because this specific allegation is emblematic of the entirety of OFAC's evidentiary memorandum, Defendants have failed to provide Plaintiff with adequate notice as to the factual basis for OFAC's determination that Plaintiff continues to meet the criteria for designation.

Third, Defendants make several arguments regarding Plaintiff's due process claim, including, for instance, that OFAC's interests in protecting classified and privileged information trumps "Joumaa's desire to learn precisely how OFAC 'is utilizing' information on which it has relied." Def.'s Memo. at 22. But Plaintiff's argument is straightforward: Defendants must disclose "how the information contained in the unprivileged and unclassified summary relates to the redacted portions of the evidentiary memorandum." Pl.'s Memo. at 36. Plaintiff merely seeks to understand how the factual allegations in the non-privileged and unclassified summary relate to the specific sub-headings of Section IV of OFAC's evidentiary memorandum.

---

[6] Although OFAC has acknowledged the termination of certain relationships allegedly previously maintained by Plaintiff, there is no instance in the administrative record where OFAC accepts as true a denial made by Plaintiff.

[7] Plaintiff likewise requests that the Court review the redacted portions of the administrative record to determine whether the redactions are appropriate. During the pendency of Plaintiff's delisting request, the entire portion of the administrative record detailing the basis for Plaintiff's designation was redacted and OFAC's non-privileged and unclassified summary of otherwise privileged information totaled four (4) sentences in length. It was only after OFAC's March 2, 2018 denial that the agency determined that additional material in that record was releasable, as evident from the new non-privileged and unclassified summary relating to the 2011 designation. Plaintiff thus has the sense that he "has been forced to stumble towards a moving target," as OFAC releases additional information (and thus bases for designation) only after having denied Plaintiff's delisting request. *See Zevallos*, 793 F.3d at 118 (where the Court noted that "[n]othing about the history of this case suggests that Zevallos has been forced to stumble towards a moving target.").

Defendants not only fail to disclose how the factual allegations in the non-privileged and unclassified summary relate to the evidentiary memorandum, but also attempt to present them as if they exist independent of OFAC's reasoning detailed in the evidentiary memorandum. Such presentation is misleading, however, as the non-privileged and unclassified summary specifically relates to the redacted portions of the evidentiary memorandum, and Defendants' failure to correlate them leaves Plaintiff "unable to understand the manner in which OFAC is utilizing [these allegations] to support its finding or its ultimate conclusion." *Id*.

This is a critical defect insofar as Plaintiff claims that OFAC's evidence is being used to support a factor not relevant to the criteria for designation under the Kingpin Act. Plaintiff does not dispute "the government's national security classifications and privilege assertions," but rather seeks to know how the evidence disclosed in the non-privileged and unclassified summary corresponds to the sub-headings of Section IV of the evidentiary memorandum. Def.'s Mem. at 22. Defendants offer no explanation as to how connecting the disclosures to their corresponding subsections would undermine "the interests protected by the government's national security classifications and privilege assertions." *Id*.

Finally, despite Defendant's representations to the contrary, Plaintiff is not claiming that OFAC has denied him an opportunity to be heard, but rather that OFAC has denied him a *meaningful* opportunity to be heard by refusing to provide adequate notice as to the factual basis underlying his designation and OFAC's subsequent determination that he continues to meet the criteria for designation under the Kingpin Act. *See* Pl.'s Mem. at 31 ("Defendants' non-privileged and unclassified summary – as well as the broader administrative record to which it is a part . . . denies Plaintiff a *meaningful* opportunity to be heard . . .") (emphasis added).

This distinction is elementary to Fifth Amendment jurisprudence. *See e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 333 (holding that constitutionally adequate due process mandates that person be afforded "the opportunity to be heard . . . in a meaningful manner."). This includes jurisprudence arising out of OFAC designation cases, including the case law cited by Defendants. *See* Def.'s Mem. at 22-23; *see also Kindhearts for Charitable Humanitarian Dev. v. Geithner*, 647 F. Supp. 2d 857, 902 (stating that OFAC must "give the deprived party an understanding of the allegations against it so that it has the opportunity to make a meaningful response."). The central question is whether Defendants have provided adequate notice of the factual basis of Plaintiff's designation and OFAC's denial decision so as to permit him a meaningful opportunity to respond. Plaintiff firmly contends that the answer is no, and thus Defendants are in violation of their due process obligations.

**CONCLUSION**

Plaintiff will find no relief from Defendants or OFAC. For reasons not directly expressed, but inferred from the administrative record,[8] OFAC has to defend this case in court on evidence that clearly cannot support a finding that Plaintiff continues to meet the basis for designation under the Kingpin Act. In order to do so, Defendants attempt to stretch the law beyond its Congressionally imposed constraints to suit the scant evidence for their allegations. This is impermissible in light of the express language of the statute and beyond the Executive's authority.

---

[8] Plaintiff refers to FN 11 and Exhibit 30 of the administrative record citing a recent Politico article detailing the prior administration's failures to crack down on Hezbollah-related drug trafficking. That article details allegations of conduct occurring long ago, and appears to be haphazardly included in reflection of the current political climate surrounding Iran, Hezbollah-linked narcotics traffickers, and the prior administration's lax enforcement of U.S. law against those parties. A.R. 0007, 1432-1479. Ironically, Plaintiff was both designated under the Kingpin Act and indicted by the prior administration.

It is thus arbitrary and capricious and must be overturned.  Defendant will find no relief on remand. *Regulatory Utility National Ass'n v. Energy Dept.*, 736 F.3d 517, 520 (D.C. Cir. 2013) (reasoning that if an agency faces a political dilemma, and its response is disingenuous and contrary to law, courts may order specific agency action where remand would not serve any purpose).

Accordingly, Plaintiff respectfully requests this Honorable Court to order Defendants to grant Plaintiff's Cross-Motion for Summary Judgment, rescind Plaintiff's Kingpin Act designation, and direct OFAC to remove Plaintiff from OFAC's List of Specially Designated Nationals and Blocked Persons.

Dated May 25, 2018

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*
